HARVEY SCUDDER & others *vs.* WILLIAM BRADBURY.

A. sold and delivered flour to B. for a certain price, without specifying a time of payment, and upon B.'s refusal to pay for it replevied it from a warehouseman with whom it was stored, contending that by a usage of the flour trade the property in it never passed from him. The warehouseman, in his answer, denied the plaintiff's title, and alleged that the property in the flour was in C., of whom he was bailee. *Held*, on the trial, (1) that the property in the flour passed to B. by the delivery to him, whatever might have been A.'s secret intention or understanding, unless the usage attached a condition to deliveries of flour sold that property therein should not pass from the seller until payment of the price; (2) that such a usage, to be binding, must be universal; (3) that, as applied to the facts, the plaintiff had no ground of exception to instructions of the judge to the jury that in law a cash sale is not necessarily a conditional sale, and it was for them to determine on the evidence whether this sale was conditional or not; (4) that the rule that there is no contract when the minds of the parties do not meet had no application to the facts; and (5) that evidence of the transfer of the flour from B. to C., before the replevin, was admissible under the answer.

REPLEVIN of 115 barrels of flour from a warehouseman. Writ dated December 22, 1868. The answer denied any property or right of possession, on the part of the plaintiffs, in or to the flour, and alleged that it was property of the firm of George W. War-

ren & Company, and was in the possession of the defendant as their bailee at the time of the replevin.

At the trial in the superior court, before *Lord*, J., the plain-tiffs' evidence tended to show that on December 11, 1868, they agreed with William H. Wallace to sell him the flour, which they owned and were keeping stored in the defendant's warehouse; that the brands of the flour, the number of barrels, and the price per barrel, were all included in the agreement, but nothing was said about the time of payment; that on the same day the plaintiffs gave Wallace a written order on the defendant for the delivery of the flour to Wallace, and on December 21 presented to Wallace a bill of parcels for the agreed price of the flour, and demanded payment; but that Wallace did not comply with the demand; that the flour had never since been paid for; and that on December 22 the plaintiffs informed the defendant that it had not been paid for, and demanded it of him and on his refusal to deliver it to them took it on the writ in this action.

The plaintiffs also introduced evidence tending to show " that, by the usage of the flour trade, if nothing is said about time of payment, when a contract of sale is made, the sale is considered to be made for cash, but the goods are delivered without exacting payment, and ten days are allowed the purchaser to examine the goods, the seller having the right to demand payment at any time within the ten days."

The defendant's evidence tended to show that on December 11, 1868, upon receiving the plaintiffs' order of that date, above referred to, for the delivery of the flour to Wallace, the defendant made an entry on his books, transferring the flour to Wallace's account; that on December 17 he received a written order of that date, from Wallace, to deliver the flour to the firm of George W. Warren & Company, and accordingly transferred it on his books from the account of Wallace to the account of that firm, and gave the firm a certificate of the same date, that he held it subject to their order; and that Wallace on that date had pledged this and other lots of flour to that firm as collateral security for a loan of $5000 from them to him, and had given them a bill of sale of the lots so pledged.

The defendant also introduced evidence tending to show " that by the usage of the flour trade, when a contract of sale is made and nothing is said about the time of payment, the purchaser has a credit of ten days, and payment cannot be demanded until the tenth day, and that it was customary, when goods were bought without anything being said about the time of payment, to re-sell them within the ten days, and before paying for them."

So much of this evidence as related to the defendant's transac-tions with George W. Warren & Company, and their transac-tions with the defendant, was admitted under the plaintiffs' objection; and after its admission the plaintiffs contended that the transfer of the flour to that firm was fraudulent.

The judge charged the jury as follows : " There is no differ-ence at all between the parties as to what transpired at the time of the making of the contract. It is agreed what took place was, that Wallace should have 115 barrels of flour, of the brand des-ignated, at $7 per barrel, and an order was given to him for it, which he took and presented to the warehouseman, and the flour was transferred to his name. So far, the parties exactly agree. If this was all, if nothing more entered into the contract between the parties, the property in the flour passed to Wallace, and he had the right to transfer it. The plaintiffs contend that there is a usage of trade, that, when flour is sold and delivered, and nothing is said between the parties upon the question of payment, it is understood that the sale is for cash, and that the property does not pass until payment. It is incumbent upon the plaintiffs to establish this usage. If they have done so, then no property passed by the sale, it being agreed that payment has not been made ; and the plaintiffs are entitled to recover.

" To determine this question, it is necessary to understand what a usage is, which thus affects a contract. It does not show a usage of trade, to show that many persons, or a majority of persons, engaged in the business, practise in a particular mode. To constitute a usage of trade so as to have it affect the contract, the practice must be universal. If it is sometimes practised and sometimes not, although it may be more frequently done than not done, that does not make what in law is a usage, which en

ters into and makes part of a contract. It must be *the* mode in which persons in that trade do their business. The usage must also be uniform. If different persons in the trade practise differently, it is not a usage, even though more persons practise one way than do another. The witnesses for the respective parties use different phraseology; the plaintiffs' witnesses say that the sale is for cash in ten days, if nothing is said about payment; the defendant's witnesses say that there is a credit of ten days, if nothing is said about payment. This difference of expression as to cash or credit is not the material thing, for both parties agree that payment is to be made in ten days. The real question is, Does the property pass before payment? And is there such a usage shown, that by the general consent of the trade the property does not pass till payment, notwithstanding the delivery? Every witness upon each side testified that it is the practice among purchasers to sell again before the ten days have expired; and this fact, if proved, has a bearing upon the question whether such a usage exists. The usage which the plaintiffs are to establish is a usage that the property is understood not to pass by delivery until payment is made. If they have established this usage, they are entitled to recover; otherwise, not; and it is to be established upon a fair preponderance of the evidence."

The plaintiffs afterwards requested the judge to rule " that, if the jury should find no usage proved, the law implied, inasmuch as nothing was said about the time of payment, that the sale was for cash; and that a cash sale was a conditional sale; and that the question was, whether the plaintiffs had waived the condition by the delivery of the goods." But the judge declined so to rule, and ruled " that such a sale was a cash sale, but by delivery the property passed unless something was shown to prevent it."

The plaintiffs then prayed for the following instructions: " 1. A sale for cash is a conditional sale, and if the cash is not paid in a reasonable time after the sale the purchaser takes no title thereby to the goods sold. 2. What is a reasonable time, within which the cash must be paid to satisfy the condition, is a question of usage in trade. 3. The delivery of the flour to Wallace did not waive the condition, unless the plaintiffs at the time

intended to waive the condition, and make the delivery for the purpose of passing the absolute title to the flour. 4. If the jury find that at the time of the sale the plaintiffs understood that they were selling for cash, and find that Wallace understood that he was buying upon credit, then the minds of the parties never met, and there was no valid contract, and no sale, and the verdict must be for the plaintiffs."

As to the first two of these prayers, the judge ruled " that a cash sale might or might not be a conditional sale; that it was not necessarily in law either a conditional or an unconditional sale; and that it was for the jury to determine upon the evidence whether the sale was conditional or not."

As to the third and fourth prayers, he said " that he understood the plaintiffs to claim that by usage the property did not pass, notwithstanding the delivery, when nothing is said on the subject of payment or delivery; and if they had established the usage the property did not pass; but unless they had, there was nothing to take the case from the common one of sale and delivery of a personal chattel; that in this case the mere contract, not being in writing, was of no validity without delivery, the price being more than fifty dollars; and that the question of misunderstanding of the parties as to the terms of the contract did not seem to arise, their difference being as to the effect of the transaction; but if the jury said that their minds never met upon the terms of the contract, then the plaintiffs could recover, if the defendant was not a *bonâ fide* purchaser for value; but if he was, then the delivery as to him would vest the title in Wallace, if the plaintiffs delivered to him the *indicia* of title which accompany the sale and delivery of chattels."

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*J. Lathrop & E. H. Abbot*, for the plaintiffs.

*H. W. Paine & A. Russ*, for the defendant.

Morton, J. At the trial, it appeared that the plaintiffs agreed to sell and Wallace agreed to buy the flour in controversy for seven dollars a barrel, nothing being said as to the time of payment. Under this agreement of sale, the plaintiffs gave to

Wallace an order upon the defendant, who had possession of the flour as warehouseman, to deliver it to him, which order the defendant accepted and thereupon transferred the flour upon his books to the account of Wallace. This order thus acted upon constituted a delivery to Wallace. Upon these facts, which were undisputed, and which constituted all the evidence of the express contract between the parties, the presiding judge rightly instructed the jury, that "if this was all, if nothing more entered into the contract between the parties, the property in the flour passed to Wallace, and he had the right to transfer it."

Where nothing is said, in a contract of sale of goods, as to the time of payment, the ordinary presumption is, that the sale is for cash, and the seller is not obliged to deliver the goods unless the price is concurrently paid. But if he voluntarily delivers the goods, this is presumptively a waiver of the condition which attaches to a cash sale, and the title passes to the purchaser unless it is shown that the delivery was upon a condition which has not been complied with. *Farlow* v. *Ellis*, 15 Gray, 229. *Whitney* v. *Eaton*, Ib. 225. The instructions at the trial were in accordance with these principles.

To meet this aspect of their case, the plaintiffs undertook to prove that " by the usage of the flour trade, if nothing is said about time of payment, when a contract of sale is made, the sale is considered to be made for cash, but the goods are delivered without exacting payment, and ten days are allowed the purchaser to examine the goods, the seller having the right to demand payment any time within the ten days." The judge instructed the jury : " The plaintiffs contend that there is a usage of trade, that, when flour is sold and delivered, and nothing is said between the parties upon the question of payment, it is understood that the sale is for cash, and that the property does not pass until payment. It is incumbent upon the plaintiffs to establish this usage. If they have done so, then no property passed by the sale, it being agreed that payment has not been made ; and the plaintiffs are entitled. to recover." We think that the plaintiffs have no reason to complain of this instruction. To be of any avail to the plaintiffs in this case, the usage offered must

go so far as to show that the delivery was upon the condition that the property should not pass until payment. Otherwise the rule above stated would apply, and the delivery would be a waiver of the only condition which necessarily attaches to a cash sale, namely, that the price should be paid upon delivery. The further instruction that, to constitute a usage of trade so as to have that usage affect the contract, the practice must be universal, was in conformity with the decisions, and was correct.

After the charge, the plaintiffs presented several prayers for instructions, which remain to be considered.

The first two were as follows : " 1. A sale for cash is a conditional sale, and if the cash is not paid in a reasonable time after the sale, the purchaser takes no title thereby to the goods sold. 2. What is a reasonable time, within which the cash must be paid to satisfy the condition, is a question of usage in trade." The judge refused these prayers ; and, upon the subjects embraced in them, ruled " that a cash sale might or might not be a conditional sale ; that it was not necessarily in law either a conditional or an unconditional sale ; and that it was for the jury to determine upon the evidence whether the sale was conditional or not." These rulings, applied to the facts of this case, in which the sale was accompanied by a delivery, were correct and apt. Their purpose and effect was, to keep the minds of the jury to the precise issue of fact to which their attention had been clearly and pointedly called by the charge, and on which the rights of the parties turned.

The court also rightly refused the third prayer. The delivery of the flour to Wallace, if there was no condition annexed to it by agreement or by the usage of trade, passed the title to him ; and a secret intent or understanding of the plaintiffs, that the title should not pass, would not affect his rights. *Taft* v. *Dickinson*, 6 Allen, 553.

In their fourth prayer, the plaintiffs requested the court to rule that " if the jury find that at the time of the sale the plaintiffs understood they were selling for cash, and find that Wallace understood he was buying upon credit, then the minds of the parties never met, and there was no valid contract, and no sale, and the

verdict must be for the plaintiffs." This instruction was properly refused. The rule that, where the minds of the parties to a contract of sale do not meet, as to the subject matter or some of the essential terms of the contract, there is no sale, does not apply. There is no pretence, in this case, that there was any misunderstanding as to the subject matter of the sale, or any of the terms of the express contract. The only misunderstanding, if any, was as to the legal effect of these terms. The plaintiffs claim that by usage, upon such a contract, the property does not pass to the buyer. The effect of the usage, if proved, would be to establish a rule of law which governs the rights of the parties, whether it was known to them or not. The fact, that the parties entertained different views as to such usage, would not enable either to defeat the contract into which they had entered. As stated by the learned judge in his rulings in this case, the difference of the parties was as to the effect of the transaction, and not as to the terms of the contract. In this view, the ruling, that if there was not a meeting of the minds, as to the terms of the contract, the plaintiffs could not recover, if they had delivered to Wallace the usual *indicia* of title to the goods, and Warren & Company were *bonâ fide* purchasers, was immaterial, and need not be considered.

The only remaining question is, as to the admissibility of the evidence of the transfer of the flour to Warren & Company by Wallace. The answer denies the title of the plaintiffs, and sets up title in Warren & Company. They were the real defendants, and it was competent for them to show tne relation in which they stood to the suit and the property.     *Exceptions overruled.*