JOHN M. PORTER & another *vs.* JOEL H. HILLS & another.

Whether, in answer to an order upon him for "the balance" of flour in his hands, a warehouseman's refusal to deliver it until the number of barrels called for is specified, is a reasonable refusal, is a question for the jury.

A usage, to be binding, must be universal, uniform, and of sufficiently long continuance to afford a presumption that it was known by the party to be affected by it.

TORT, for the conversion of twelve barrels of flour. At the trial in the Superior Court, before *Rockwell*, J., it appeared that the defendants were public warehousemen, and kept a storehouse in Boston for the storage of flour; that the plaintiffs had with them upon storage one hundred and fifty barrels of flour; that they drew orders for parts of it; that prior to June 27, 1871, all but twelve barrels of it had been delivered; that June 27, 1871, all storage and charges being paid, the plaintiffs sent by a teamster to the defendants the following order: "June 27, 1871. Messrs. Hills & Brother: Please deliver the bearer the balance due us of Clermont flour, and oblige Porter & Co.;" that the teamster presented this order to the defendants, who declined to deliver the flour unless the plaintiffs would specify the number of barrels, and objected to the order because it was for the balance merely, without stating the number of barrels; that the plaintiffs then sent this order: "Boston, June 27, 1871. Messrs. Hills & Brother: We demand of you the balance, due us this day of Clermont Mills flour on order that has been presented to you for one hun

dred barrels of Clermont Mills flour. Yours respectfully, Porter & Co.;" that this order was presented to the defendants, who refused to deliver the flour for the same reason as before given, but offered to deliver upon a proper order, which should specify the number of barrels asked for, and stated that if the defendants and the plaintiffs did not agree as to what the balance was, they would compare books; that thereupon the plaintiffs brought this suit.

The defendants offered evidence to show that their rule and course of business was, where there were partial orders, and after an order for the balance of an amount, to require that the order for the balance should state the number of barrels constituting it, and also offered evidence that such was the usage in Boston among public storehouse keepers. The plaintiffs denied the existence of such a usage, and contended that such a practice must be universal in order to be binding as a usage, and introduced evidence tending to disprove the usage. The defendants also offered evidence tending to show that this rule and course of practice of theirs was communicated to and known by the plaintiffs.

The defendants requested the following instructions:

" 1. The plaintiffs must prove that defendants converted the property to their own use as a matter of fact.

" 2. Refusal to deliver upon demand is not itself conversion, but only evidence of the fact, and it may be rebutted or explained.

" 3. If upon the whole evidence, the jury do not find that defendants wrongfully withheld the property, plaintiffs cannot recover.

" 4. Defendants being rightly in possession, were not liable in trover until after demand made, as they still held the property in their warehouse subject to the owner's order.

" 5. The demand alleged being made through a teamster, defendants had a right to require a proper and suitable order, one which was reasonably sufficient.

" If the kind of order presented was not in the usual and ordinary form in the respect named, and defendants required only what was in accordance with the usual and ordinary practice, it would be no conversion.

" 6. It would make no difference that such orders were sometimes drawn and filled. Every person making contracts in reference to any course of trade or branch of business, is presumed to be acquainted with the usages of that business.

" 7. Being public warehousemen, the defendants had a right to establish reasonable rules and regulations relating to the matter in question; and plaintiffs, on being informed of same, were bound to comply, independently of any general usage, and whether they had previously known of it.

" 8. Or if defendants' course of business was to require the number of barrels to be specified in drawing for a balance, and plaintiff knew of it, he was bound to comply on this account alone.

" 9. If there was an established usage among warehousemen, and in the trade in Boston, to that effect, which was general, certain and uniform, and reasonable, and plaintiffs actually knew of it, or if it had existed so long that their knowledge may be presumed or inferred, they would be bound by it. To be binding the usage need not have been universally acquiesced in, if it had the other said requisites, to wit: It must be certain, reasonable, uniform, general, and sufficiently ancient to afford a presumption that it is generally known. It need not be universal.

" 10. It appearing, or if the jury find, that defendants had the flour on hand ready to deliver upon proper demand, and were willing and ready to deliver to the teamster, and so expressed themselves, and so sent word to the plaintiffs if they would send a different order in the particular complained of in the order sent, and they did not do so, and made no further demand, this refusal to deliver upon either of the orders sent was no conversion. The requirement as to the order was reasonable on the part of defendants, and they had a right to ask for a different order, and doing so as the only condition of delivery was no conversion."

The court did not give these instructions, but instructed the jury in substance as follows :

" To sustain their action the plaintiffs must prove satisfactorily that there was a conversion on the part of the defendants of the

barrels of flour in controversy. To prove this, they rely upon the evidence which they claim proves a proper and sufficient demand on their part, and an unreasonable refusal on the part of the defendants. They rely on the demand made by the teamsters in presenting the written demands which are in evidence, and they are competent evidence to prove a demand, and if the evidence of demand and refusal is satisfactory to the jury, it may prove a conversion just as effectually for the purpose of such an action as this, as though there had been an actual conversion by defendants to their own use ; that the claim of the plaintiffs was that the orders were sufficient if there was no contract as to what the form of the orders should be ; that it would be for the jury to say if it was a clear and explicit demand which could clearly and reasonably be understood by both parties, as the plaintiffs had a right to have the flour, and defendants had no right to keep it, and it must be delivered up upon such order ; and if such an order was made and not complied with, it would be such evidence of a demand and refusal as would be competent for the consideration of the jury, and if sufficient in their minds to prove it, it was sufficient to be the foundation of a verdict for plaintiffs.

" That this would be so unless defendants prove that there was a contract that there should be a different order; that it was to be proved by showing that at the time that plaintiffs sent the order of Dimick & Russell, or before or at the time these orders were presented, it was substantially agreed between them that when flour was drawn out upon orders, these orders should specifically state the number of barrels wanted, and that orders for the balance should not be sufficient; that they are to prove by the words or conduct between the parties that there was at that time such a contract, or they should show it by a universal and uniform custom among the trade in Boston, that when such orders were drawn they need not be answered or be complied with unless they specified the number of barrels which were wanted.

" The court also ruled, that a rule, adopted by the defendants, that no orders for balances should be complied with, unless the number of barrels ordered was stated, would not justify a refusal

to deliver, on that ground, unless such rule was known to the plaintiffs.

" Upon the question of usage or custom the court ruled : It must be a custom of sufficiently long continuance, that all parties may be presumed to know it, it must be uniform, it must be universal. It does not show a usage of trade to show that many persons or a majority of persons engaged in the business practice in a particular mode. To constitute a usage of trade, so as to have it affect the contract, the practice must be universal. It must be *the* mode in which persons in that trade do their business." The jury rendered a verdict for the plaintiffs, and the defendants alleged exceptions.

*A. A. Ranney*, for the defendants.

*T. S. Dame*, for the plaintiffs.

Colt, J. The defendants as public warehousemen received for storage one hundred and fifty barrels of flour, portions of which were delivered from time to time upon the plaintiffs' orders, until but twelve barrels remained. The plaintiffs' title to the property was not questioned ; but the defendants refused to deliver the flour that was left, because the written order for its delivery was for the balance due, and did not state the number of barrels. They demanded that the plaintiffs should specify the number, offering to compare books if there was then found to be a disagreement. The plaintiffs declined to do so, and thereupon brought this action, alleging the defendants' conversion of the flour ; and the only question is as to the effect of the demand and refusal. The parties stand on their strict legal rights.

Under the instructions given, the jury must have found that the plaintiffs made a sufficient demand for the property, and that the defendants unreasonably refused to deliver it ; that there was no express or implied agreement between the parties that orders for flour should specify the number of barrels; and that there was no such usage of trade in Boston. In the absence of any agreement or usage, the jury were warranted in finding that a demand for all the flour of the plaintiffs then in the defendants' possession was sufficiently intelligible and definite. Upon the question of the propriety and reasonableness of

it they were plainly permitted to take into account the general nature of the business and the subject matter of the bailment, and their finding in favor of the plaintiffs is conclusive. If the demand was otherwise proper and reasonable, then the requirement for a more specific statement, which the defendants desired as necessary for their protection, and to prevent mistakes and confusion, must be shown to have been assented to as part of the contract, to be binding on the plaintiffs. The jury were so told. As public warehousemen the defendants were required to keep books, showing all their warehouse transactions, open to the inspection of all persons interested. St. 1860, *c.* 206, § 6. And the jury have found that the plaintiffs could not reasonably be required to furnish checks or keep accounts, for the defendants' use, of their business with them. The defendants' requests for instructions on this point, so far as they are not covered by the instructions given, were properly refused. *Reed* v. *Richardson,* 98 Mass. 216.

The elements necessary to establish a usage were correctly stated by the judge at the trial. *Scudder* v. *Bradbury,* 106 Mass. 422. Chitty on Con. (11th Am. ed.) 83. There is nothing in the evidence reported which required the further instructions asked for on this point. *Exceptions overruled.*