HENRY L. PEVEY *vs.* SCHULENBURG & BOECKELER LUMBER COMPANY.

December 22, 1884.

**Local Usage held not Proved.**—Proof that persons doing two-thirds of a particular business at a certain place had adopted a peculiar usage in respect thereto, it appearing that the other persons doing business at that place did not conform to that usage, is insufficient to constitute the usage a local or particular *custom.*

**Charge—Immaterial Error.**—An immaterial error in a charge to the jury should be disregarded.

**Contract—Measure of Damages for Breach.**—A proper measure of damages for breach of a contract for towing logs, the log-owner having prevented the performance, is the difference between the contract price and what it would have cost the other party (plaintiff) to perform.

**Practice—Verdict—Evidence—Presumptions.**—A cause having been submitted to a jury without objection, to find upon several alleged causes of action, the verdict will not be presumed to have been found upon one of such causes of action which was unsupported by sufficient evidence, but, unless it is apparent that such is not the case, will be deemed to have been made with regard to those causes of action which were sufficiently proved.

Evidence *held* sufficient to sustain the verdict.

Plaintiff brought this action in the district court for Washington county, alleging a contract between himself and defendant by which he was to do certain towing, and seeking to recover (1) the value of his services lost through defendant's negligence and delay, (2) the cost of refitting rafts, (3) the amount unpaid for the towage of the 5,080,110 feet of logs mentioned in the opinion, (4) damages for defendant's preventing him from towing under the contract certain rafts of defendant, and (5) for extra services in stopping and securing certain rafts.

The action was tried before *McCluer*, J., and a jury, and plaintiff had a verdict. Defendant appeals from an order refusing a new trial.

*Clapp & Macartney*, for appellant.

*J. N. Searles*, for respondent.

DICKINSON, J. The plaintiff, who was the owner and master of a

steam-boat, made a verbal contract with the defendant in June, 1883, at Stillwater, for the towage of logs in rafts by him, for the defendant, from Beef slough, at the mouth of the Chippewa river, to a point below on the Mississippi river, called New Boston bay, for the agreed price of $1.50 per thousand feet. The questions first to be considered relate to a controversy as to the amount of logs towed, and as to the manner of scaling the logs for the purpose of computing that amount. Both parties are to be regarded as conceding that the term "a thousand feet," in the contract, was intended to exclude hollow, rotten, and crooked logs, and that it was understood that estimate or computation of the amount of logs in the rafts would be made only of sound, straight, merchantable logs. This is in accordance with our statutory rule for scaling logs. Gen. St. 1878, c. 32, § 12.

The defendant asserts the applicability to the case, as affecting the contract, and as determining the mode of estimating the quantity of logs, of an alleged *custom* at Beef slough, where the rafts were made up, to scale all logs "full," (that is, taking the full measure of all logs, without regard to defects,) and then to deduct from the full amount so scaled 15 per cent., as the allowance for defective, unmerchantable logs. The logs towed to New Boston bay were scaled "full" in this manner by the boom company, whose duty it was to assort, scale, and deliver the logs, and from which the rafts were received for towing. No estimate was made as to the defects in individual logs scaled. The amount of logs towed by the plaintiff to New Boston bay, as measured by the "full" scale, and without deduction or allowance for defective logs, was 5,080,110 feet. The defendant has paid for towing that amount, less 15 per cent., which it claims to have been both a proper and reasonable deduction or allowance for defective logs, and in accordance with the alleged *custom*. The plaintiff seeks to recover for the remaining 15 per cent.

The court instructed the jury that the alleged custom was not established, which instruction the defendant contends was erroneous. The defendant sought to prove the alleged custom by evidence that an association or "pool," consisting of the owners of two-thirds of the logs brought into Beef slough, and of which this defendant was a member, in 1882 and 1883 had their logs scaled "full," the amount of mer-

chantable logs being computed by deducting 15 per cent. from the "full" scale in 1883, (12½ per cent. being deducted in 1882;) that this mode of scaling the logs of this association was adopted and applied in computing the amounts of logs; in measuring compensation to the boom company for its services in respect to the logs; in distributing logs among the members of the association; in sales made; and in fixing compensation for towing. This usage existed only with respect to the logs of this "pool," other logs at Beef slough being scaled in the ordinary way, and as prescribed by our statute. The defendant also claims to have shown that the plaintiff knew of this usage.

This was insufficient to establish a local or particular *custom* existing at the time the contract in question was made, and with reference to which the parties should be presumed to have contracted. There was wanting that *generality* of usage at the place where the custom is alleged to have been established which is necessary to the existence of a custom. *Porter* v. *Hills,* 114 Mass. 106; *Adams* v. *Otterback,* 15 How. 539; *Janney* v. *Boyd,* 30 Minn. 319. The adopting of a peculiar mode of doing business by two-thirds merely of those engaged in that business at Beef slough had not the effect to make that mode a *custom,* it appearing that the usage was thus limited. The instruction of the court was correct.

The court instructed the jury that "in all contracts relating to logs by the thousand feet, made in this state, they are presumed to be made with reference to the law prescribing the manner in which logs are to be scaled. This law is that in measuring logs the scaler shall make such allowance for hollow, rotten, and crooked logs as would reduce and make them equal to good, sound, straight, and merchantable logs." There was no substantial error in the charge, as applied to this case, although it be conceded that it was contemplated that the contract would be performed out of this state. Both parties are to be deemed as conceding that an allowance should be made for defective logs, so that the measurement should represent only the sound, straight, and merchantable logs. The controversy was as to the *mode* of arriving at such measurement, and as to whether *15 per cent.* of all the logs should be taken as representing the amount of defect-

ive logs. The defendant claimed that the 15 per cent. should be deducted—*first*, because of the alleged custom; *second*, because an agreement to that effect was to be implied from the knowledge of the plaintiff as to the alleged usage of the "pool" to so measure their logs, and from the fact that he acquiesced for a time, as is claimed, in such measurements; and, *third*, because in fact that deduction did fairly and accurately represent the amount of defective logs.

The two theories of the defendant first referred to above were properly disposed of by the court: the *first*, by the instruction that no custom had been shown; and the *second*, by an instruction that "if the contract was made between the plaintiff and the defendant with the understanding that this was to be the mode by which the amount of logs was to be arrived at, then it would be binding upon the parties." If the 15 per cent. was a correct measure of defective logs, as the defendant sought to prove, there was nothing in the charge to forbid the jury making that allowance. It was an immaterial error, if it was error, that the admitted and recognized right of allowance for defective logs was stated as being one prescribed by the laws of the state. We find no error in respect to the manner in which this issue was submitted to the jury.

It is, however, contended by the defendant that the 15 per cent. deducted from the full measurement was shown to have been a fair, accurate measure of the amount of defective logs; that this was undisputed; and that there was no evidence to warrant the jury in making any less or other allowance or deduction; so that a verdict in plaintiff's favor upon this cause of action cannot be sustained. It may be conceded that this is so; yet no objection was made to this issue going to the jury, and unless their verdict is plainly or necessarily referable, in part at least, to this cause of action, it will not be presumed to have been based upon a claim unsupported by evidence, but will rather be deemed to rest upon such other alleged causes of action as are supported by sufficient proof. There were five other causes of action alleged, which were supported by evidence. It is inexpedient to extend this opinion by a particular statement of the nature of these claims, or of the proof in support of them, and we will only say that such evidence was sufficient to sustain the verdict.

Error is alleged in respect to the reception of evidence relating to one of these causes of action. The plaintiff claimed damages for an alleged breach of the contract for towing, in that he was prevented from towing certain rafts which the contract, as testified by him, entitled him to tow. He was asked the question: "What would it have cost you to have towed them?" The objection urged is that it was based upon an improper measure of damages. The objection was not well taken. The difference between the contract price and what it would have cost the plaintiff to have performed the contract was a proper measure of his damage. *Glaspie* v. *Glassow*, 28 Minn. 158; *Morrison* v. *Lovejoy*, 6 Minn. 224, (319.)

Order affirmed.