Smith, J.
Tbe error assigned in .this case is, that the trial court refused to set aside the verdict rendered in that court, in favor of Brooks, Waterfield & Co., against Edwards, and to grant him a new trial. The question for our decision is, whether this judgment of the court under the law, and the evidence as set forth in the bill of exceptions, was right.
The action below was brought by Edwards, May 5, 1883, against the defendants in error, to recover the possession of three hogsheads of tobacco, of which he alleged that he was the owner, and entitled to the immediate possession, with damages for its illegal detention by the defendants. G-lancy made default, but Brooks, Waterfield & Co. filed an answer denying all of the averments of the petition; and on this issue the case w;as tried, and it is manifest that the burden was on the plaintiff to show, at least his right to the possession of the property, and he sought to prove both ownership and the right to the possession.
By the evidence adduced in the case, substantially this state of fact is shown. In the year 1882 and the early part, at least, of 1883, Grlancy lived at Miamiville, Clermont county, and at his warehouse there, was engaged in the purchase of tobacco from those who raised it in that neighborhood. In Jan *455 uary, 1883, he bought the crop of Edwards at a fixed price “ all round,” and it was to be delivered to him in the month of February following, or as soon as possible, and it was either expressly agreed that payment therefor was to be made on the delivery of the tobacco, or nothing was said about it, in which case, according to law, there was an implied contract that delivery and payment therefor were to be concurrent acts.
The tobacco was delivered by Edwards himself in three lots — the first on January 29th — the second on March 26th, and the third on April 2d, 1883. Giancy was present at the delivery of the first lot, and received the same, but so far as the evidence discloses, not a word was then said by him about the payment therefor, or as to the manner in which the tobacco was to be treated, or who was to be the owner thereof, and the game is true, as to what took place at the delivery of the other two lots, at which Giancy was not present, but he had representatives there to receive them. Some time after this, Edwards drew an order on Giancy in favor of Boyd, for $10 on account of the price of the tobacco, and Giancy paid Moran for Edwards, $55, and Scott Bros. $145 for him, which payments were ratified and approved by Edwards.
Edwards in his evidence says that it was several days after the last delivery of the tobacco before he could get to see Giancy. That he found him at Miamiville — that he went to get the money — that he had gone several times, before he got to see him; — at that time he says Giancy told him he did not have the money then. That before this (that is, before the final delivery) Giancy had told him he was to get the money to pay him from Brooks, Waterfield & Co., — and on this last occasion told him that he was to receive it from them on the following Tuesday, and would leave it for him with Atwood, at Milford, but did not do so, and he saw no more of him till Giancy had executed a chattel mortgage on the tobacco to B., W. & Co., which was on Saturday, April, 28th.
Some of the Edwards tobacco had been shipped by Giancy to B., W. & Co., and sold before the execution of this mortgage. Brooks, Waterfield & Co. had been making advances to him, to enable him to make such purchases, and Giancy during all *456 this time was largely indebted to them, for such advances. The three hogsheads in question were shipped to B., W. & Co. on the 26th of April, and at the date of the chattel mortgage were actually in their possession, and they had paid some charges upon them.
It seems clear from the evidence (and I have summarized all on that point) that from the 2d of April, the date of the last delivery, until May 5, 1883, the time of the bringing of the action, there is nothing which tends to show any claim by Edwards that he was still the owner of the tobacco, or that he had in any way assumed to own or control it, or to interfere in the slightest degree with the control of Glancy over it, or with any disposition of it by him, though he knew of the custom of Glancy to ship to the defendants to obtain money.
There was other evidence tending to show that Edwards acted as if the transaction was a sale to Glancy and that he held a claim against him for the purchase price, and asserted no right to the ownership of the tobacco, until the bringing of the suit, May 5, 1883. * * * *
Was Edwards then the owner of this property at the time he commenced this action; or was he entitled to the possession of it at that time ? If so, he is entitled to recover. If not, he must fail, and damages should be awarded against him either for the value of the property taken, or the damages the defendants have sustained, depending as to the amount on the question whether the latter were the absolute or only the special owners thereof, or were only entitled to the possession for some specific purpose. The question, however, as to the amount of damages the defendants are entitled to, if any, as we understand it, is agreed upon by the parties, who stipulate that the recovery, if anything, shall be so much.
It is conceded that Edwards, under his original contract, was entitled to demand payment for the tobacco, before any ‘ right to it would pass to Glancy. If he had actually turned j it over to him, expecting immediate payment, and it was not made, he was at liberty to repossess himself of it, and Glancy would have had no right to it.
The doctrine of the law on this point is stated very strongly in 23 O. S., 311, the syllabus of which is as follows:
*457 “ 1. Where one agrees to sell, and another to buy articles at a specified price, and there is no other stipulation as as to payment, it is presumed to be a cash sale, and the delivery of the goods, and payment of the price are to be simultaneous and concurrent acts.
“ 2. The delivery of the goods on such sale, with the expectation of receiving immediate payment, is not an absolute delivery, and no title vests in the purchaser till the price is paid.”
But it is obvious that the language used in the 2nd syllabus is not to be understood in the broadest sense — that is, that under no circumstances will the title vest in the purchaser, when a delivery of goods is made, with an expectation of receiving immediate payment, till the price is paid. Such a construction of it, would operate to prevent any subsequent arrangement between the parties that the title should vest, notwithstanding the failure to pay, and would overturn the well-established doctrine, that a condition in favor of one party to a contract, may be waived by him, either expressly, or that such waiver may be implied from his conduct. Indeed, in the very case referred to, the judge, in delivering the opinion of the court, states the doctrine of the law, with the proper qualification, which, however, is left out of the syllabus. He says: “A delivery with the expectation of receiving immediate payment, is not absolute but conditional, until payment is made, and where there is no waiver of payment, no title vests in the purchaser till the price is paid,” citing many authorities, and adds, “ in this case there was no waiver.”
In the case of Hodgson v. Barritt, 33 O. S., 63, also cited by the plaintiff in error, and which affirms the general doctrine of the case in 23 O. S., the court to some extent recognizes the doctrine, that the seller may waive a condition tion of this kind, and the title pass to the purchaser without payment. Judge Scott says, “ for some unexplained reason, the cash payment was not made until the next day ” (after delivery), “ but we can not infer from the mere fact that a night intervened before the cash payment was made, that the plaintiffs consented to waive their right to require present payment, or to resume possession of the barge and its cargo if *458 payment should be refused. Such temporary delay is quite consistent with the idea that the parties intended their respective rights to remain in statu quo, until payment is made.”. And in the syllabus of that case it is held, “ that the giving of a check therefor, which when presented for payment is dishonored, will not prevent the vendor from re-taking the property, though the check was not presented for four days, if the drawer had no funds in the hands of the drawee to meet it, and no injury has resulted to the drawer from the delay.”
That there may be a waiver of this kind, is clear on principle and authority. There can certainly be no good reason why it might not be done, and the books are full of cases in which the courts have held that it may. In Benjamin on Sales, note d to section 820, the rule is thus stated : “ When there is a condition precedent attached to a contract of sale and delivery, the property does not vest in the purchaser on delivery, nor until he performs the condition, or the seller waives it,” and a multitude of authorities are cited in support of the rule.
What will constitute a waiver in such case ? Chancellor Kent, in the 2d volume of his Commentaries, states the law thus: “If he (the seller) does deliver freely and absolutely, and without any fraudulent contrivance on the part of the vendee to obtain possession, and without exacting or expecting'simultaneous payment, there are a confidence and credit bestowed, and the precedent condition of payment is waived, and the right of propertj^ passes.” * * * “ If it was even a condition of the contract that the seller, was to receive a note or security for payment at another time, he may dispense with that condition, and it will be deemed waived by a voluntary and absolute delivery without a concurrent demand of the security. But if the delivery in that case be accompanied with a declaration on the part of the seller, that he should not consider the goods as sold until the security be given, or if that be the implied understanding of the parties, the sale is conditional; and the property does not pass by the delivery, as between the original parties, though as to subse *459 quent bona fide purchasers or creditors of the vendee the conclusion might be different.”
Frank Davis, S. A. West and W. E. Jones, for plaintiff in error.
Lawrence Maxwell, Jr., for defendant in error.
The cases cited in the brief of counsel for defendant in error, viz., 106 Mass., 422-7; 111 Mass., 487-9; 115 Mass., 514-538; 111 Mass., 309, and 13 Pa. St., 146, and many others that might be named, abundantly sustain this doctrine, and we see nothing in conflict with it.
If we apply this law to the facts of this case, what is the result ? It is shown clearly that Edwards voluntarily turned the whole of his tobacco over to Glancy, without requiring payment therefor, or imposing any condition whatever upon Glancy, or in any way reserving any right to it. He allowed it to remain in the possession and sole control of Glancy and the defendants for more' than thirty days after the delivery of the last lot. He treated it as an ordinary sale and transfer of the title, and received part payment therefor, and evidently considered the balance of the purchase-money as a debt against Glancy; and joined with other creditors of Glancy in sending a committee to the city to ascertain his financial standing and obtain assurances as to the payment of his claim. He delivered the tobacco to Glancy with knowledge that it was his mode of doing business to send the tobacco to Cincinnati to be sold, and thus obtain means to pay for it, and he makes no objection to its being done; and only asserts his present claim after the tobacco is shipped to defendants at Cincinnati and they have incurred expenses upon it — have received it into their possession, and taken a chattel mortgage upon it. Does not all this amount to a waiver and a passing of the title to Glancy? If not, it is wonderfully like it; and this being a question in issue between the parties, and the court having found this issue, and it may be on this controlling point, in favor of the defendants below, how can we, in accordance with the settled principles of the law, find that the‘judgment is manifestly against the weight of the evidence? .We are not at liberty to do so, and the judgment must be affirmed. ,