## Celluloid Manuf'g Co. v. Chandler.[1]

*(Circuit Court, D. Massachusetts. April 2, 1886.*

1. COSTS—DOCKET FEE.

The taxable costs, as such, provided by sections 823, 824, Rev. St., do not belong primarily to the attorney by force of any law.

2. SAME—SECTIONS 823, 824, REV. ST.

Before the passage of the act of February 26, 1853, of which sections 823 and 824 are a revision, costs were distinctly taxed and allowed "in favor of parties obtaining judgment." Act 1793, c. 20, § 4. The purpose of the act of February 26, 1853, was to secure a uniform rule of taxation in the federal courts, and there was no purpose to change the party in whose favor the allowance was made so as to take the costs from the party to the suit and give them to the attorney.

3. SAME—USAGE.

A usage was claimed by defendant that docket fees and fees allowed for travel and attendance should be taken and treated by the solicitor or attorney

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

as his own. This usage was not shown to prevail generally, but appeared from the evidence to be confined to a few states. It was not shown to exist in the community where the complainant resided, nor was it shown that complainant had any knowledge of such usage in the communities where the services were to be rendered. *Held* that, under this state of facts, the complainant could not be held bound by any such usage.

4. SAME—ATTORNEY'S REASONABLE COMPENSATION.

Thirty-six dollars and sixty-four cents for each of 164 cases of like character, *held* to be reasonable compensation for the service of a local solicitor.

In Equity.

*Warren & Brandees*, for plaintiff.

*Wm. G. Russell, R. M. Morse*, and *A. D. Chandler*, for defendant.

WEBB, J. The Goodyear Vulcanite Company was the proprietor of a patent for the use of "vulcanite" in setting artificial teeth. The Celluloid Manufacturing Company made and sold to dentists an article called "celluloid," extensively employed for the same purpose. This use of celluloid was by the Goodyear Company claimed to be an infringement of its patent. To protect its alleged rights, it commenced proceedings in equity against a large number of dentists in Maine, New Hampshire, and Massachusetts, as well as in other states, and threatened more. The Celluloid Company issued a circular to dentists everywhere, saying:

"We do not undertake the defense of vulcanite; but if any dentist using celluloid is sued, or if any motion is made to punish a dentist or hold him liable in any way for using celluloid, or if any dentist is summoned before a master for using it, let him notify us at once, sending us any papers served on him, and not agree to admit any evidence in his case, or any record in any other case, on any pretense whatever, nor take any steps in it whatever, until after giving us such notice, and hearing from us or our counsel, * * *; and if we can have control of the case from the outset, we will assume the defense, confident of defeating," etc.

Thereupon the dentists intrusted the defense of the suits against them to the Celluloid Company. The principal counsel relied on to conduct and control the defense being residents of states other than those in which these suits were commenced, Mr. Chandler, the defendant in this case, was retained as local counsel in Massachusetts, and directed to enter his appearance for the defendants in the suits there. Mr. Chandler thereafter acted as local counsel in the Massachusetts cases, attending to the various matters required of him, keeping careful watch of the various steps taken by the complainants, and constantly advising the leading and principal counsel of every movement. The dentists, who were the defendants of record, were frequently applying to him for information and direction, and he was obliged to correspond extensively with them. The answers in the several suits were prepared without Mr. Chandler's assistance, but he kept watch that they should be seasonably filed, and was vigilant to protect all parties against any advantage that might be taken of neglect, delay, or omission in any respect. Only one of all these cases was argued, resulting in a decree that the use of celluloid was not an

infringement of the vulcanite patent. In the preparation of the evidence and the arguments Mr. Chandler took no part.

After the decree in the test case the complainants were allowed time to show, if possible, that the defendants were still liable by reason of having, without license, used vulcanite. Though in fact no effort was made to establish such liability, the mere intimation of the purpose to do so cast upon the solicitor for the dentists the duty of examining each case to determine whether the party was exposed to the charge of using rubber. In the mean time the complainant sought to evade decrees against it for costs by having bills dismissed on its own motion, and in a number of suits obtained entries of that kind. These entries were, however, after hearing, canceled, and costs in those cases, as well as in many others, were allowed the defendants. The argument of the question of costs was participated in by Mr. Chandler, and the taxation was attended to by him.

During this litigation, having entered his appearance for defendants in cases in the districts of Maine and New Hampshire, Mr. Chandler visited Portland and Portsmouth to look after and protect those suits. The whole number of suits in which this defendant appeared was 164. Costs were recovered in 124, exclusive of the test case. These costs amounted to $4,662.70, exclusive of officers' and witness fees, and were collected by Mr. Chandler from the Goodyear Dental Vulcanite Company, and the Celluloid Company, claiming that the same belonged to it, has commenced this action for their collection, having first demanded payment.

The account rendered by Mr. Chandler charges the Celluloid Company for services in 164 cases in Maine, New Hampshire, and Massachusetts,                     $6,000 00
For sundry disbursements                          228 82

                                                $6,228 82
And credits two cash payments, of $250 each,    $ 500 00
Cash collected from costs,                       4,662 70
                                                ————$5,162 70

Claiming a balance due of                        $1,066 12

This account was rendered March 22, 1878. On the twelfth of November preceding he had rendered a partial account, in which he charged sundry items of expense, amounting to        $ 98 74
And for "professional services in Boston, Portland, Portsmouth, and New York, as charged to date, including minor expenses,"                          401 26

                                                $500 00

—crediting cash to the same amount, received in two payments of $250, and in the letter accompanying this account said:

"I inclose a statement of my account to November 1st. The unsettled state of the large number of cases in question, requiring almost constant watching, attendance on motions, answering correspondence, and items of expenditure, prevents my sending any more satisfactory account at present."

The decree in the test case that the use of celluloid did not infringe the vulcanite patent was filed December 17, 1877, and on the same day, according to stipulation, a like decree was entered in all the other cases. The final decree dismissing the cases, with costs, was on the twenty-eighth of January, 1878.

Mr. Chandler resists this demand upon various grounds. The first position is that the docket fee is expressly given to the solicitor by sections 823 and 824 of the Revised Statutes of the United States, and that the costs for travel and attendance are allowances for his own travel and attendance. That costs for travel and attendance may be properly taxed to the prevailing party has been too well settled in this circuit to be now doubted. To whom these items belong is another question. They are not taxed as part of the compensation allowed by law to attorneys or solicitors, but are rather to be considered as taxed to the party. *Nichols* v. *Brunswick*, 3 Cliff. 89. The taxation is the same when no solicitor is employed, but the party appears for himself. Rev. St. §§ 823, 824, prescribe the amount to be taxed as compensation for attorneys, solicitors, and proctors, at the same time guarding against the implication that the fees so prescribed shall be taken as the just measure of compensation as between solicitor and client. It is urged that this statute determines and fixes by law the minimum of that compensation. But this construction assumes the purpose of the statute to be the regulation of charges between solicitor and client, rather than to secure uniformity in the taxation of costs, in the United States courts. Prior to the statute of 1853, February 26th, the taxation was controlled by no rule of general application. This act of February 26, 1853, substituted, in all the federal courts, for the state practice, its own provisions. Before its passage, the costs, though made to conform to the allowance for the same items in the courts of the respective states, were distinctly taxed and allowed "in favor of parties obtaining judgment." Act 1793, c. 20, § 4. That to secure this uniform rule was the object of the statute is plain, and there is no reason to conclude there was a further purpose to change the party in whose favor the allowance was made, and to take the costs from the party to the suit and give them to the attorney. "The bill of costs primarily belongs to the successful party. It is included in his judgment. It is not the attorney's, though he has a lien upon it." *Clay* v. *Moulton*, 70 Me. 315. "In strictness, all the items included in the bill of cost belong to the party." *Cooly* v. *Patterson*, 52 Me. 472.

A usage is claimed that docket fees, and fees allowed for travel and attendance, shall be taken and treated by the solicitor or attorney as his own. Such usage is testified to by so many gentlemen of the

highest character and extensive practice that there can be no doubt that the practice, in the districts where these suits were carried on, is very largely in conformity with it. But, on the other hand, witnesses of equal credit and opportunity to know have testified that they are not aware of any such invariable usage. That these are fewer in number than the others does not affect the result. *Scudder* v. *Bradbury*, 106 Mass. 422; *Porter* v. *Hills*, 114 Mass. 106. This usage, too, if it were fully proved, does not appear to prevail generally, but, so far as the evidence in this case shows, is confined to a few states. It is not shown to exist in the community where the plaintiff belongs. The only evidence on that point was in direct denial of such a usage there. Nor has it been shown, or even been attempted to be shown, that the plaintiff, its officers or agents, who employed Mr. Chandler, had any knowledge of such a usage in Massachusetts, New Hampshire, or Maine, the states in which the services were to be performed. Under this state of facts, the plaintiff cannot be held bound by any such usage as is invoked by the defendant. *Adams* v. *Insurance Co.*, 17 Fed. Rep. 630; *Marye* v. *Strouse*, 6 Sawy. 204; S. C. 5 Fed. Rep. 483; *Cobb* v. *Lime Rock Ins. Co.*, 58 Me. 326; *Dodge* v. *Favor*, 15 Gray, 82; *Stevens* v. *Reeves*, 9 Pick. 201.

But though the taxable costs, as such, neither belong primarily to the attorney, by force of any law, and have not been shown to be his by force of any usage that they shall be considered to belong to him, he is still entitled to reasonable compensation for his services. "He is entitled to a just and fair compensation for services rendered. It matters little whether the charge be a specific sum equivalent to the taxable bill of costs, less the witness fees, or the bill of costs specifically named. In either event, it represents the charge for services rendered. The reasonableness of the claim is to be determined by the tribunal to whose judgment the case is submitted." *Clay* v. *Moulton*, 70 Me. 316. "When the party employs an attorney to attend to the case for him, the party becomes indebted to the attorney for his services and disbursements in the suit; and to insure his pay the law gives the attorney, not any particular item of costs that may have accrued in the case, but a lien upon the whole bill of costs for what may be justly due him for such services and disbursements; and when his client prevails in the suit, we think the attorney may justly charge him, among other items, with the amount recovered for travel and attendance." *Cooly* v *Patterson*, 52 Me. 472.

Mr. Chandler, by his employment, was required to keep a supervision of all suits, whether many or few, that might be commenced against dentists using celluloid. In fact, he became thus connected with 164 cases. Each was distinct from all the others. In each vigilance and care were required of him. Each imposed on him the duty of keeping watch of the movement of the opposing party, informing the leading solicitors of what was taking place, and answering the inquiries of the defendants, corresponding, filing papers, and

attending to the various small and constantly arising details in such business. In 124 of those cases costs were collected amounting to the large amount demanded in this action. But these cases must be looked at distributively, and not collectively, to determine the reasonable compensation of the solicitor. The amount is charged in gross to the Celluloid Company for services in the whole 164 cases, and is equivalent to $36.64 for each case. The sum collected, including the two cash payments of $250 each, and deducting the amount of expenditures, is equal to $30.08 for services in each suit. The total charged, above the costs collected, would be $9.84 for each case; and, if the taxable costs collected be assumed to be charged only in the 124 cases in which costs were recovered, they would then stand as contingent fees in prevailing defenses of $39.83 per case, giving the solicitor for each case, where his client was successful, $49.67, and in the unsuccessful cases but $9.84; and the whole, with the exception of less than $2 per case, drawn from the purse of the adverse party.

Whatever may be taken as the rule for distributing these costs, or the charge made, the compensation claimed cannot be considered unreasonable or excessive, and the plaintiff cannot recover anything in this action.

This conclusion obviates the need of considering the right of the plaintiff to maintain this action.

Judgment for defendant.