BERNARD SILBERSTEIN and Others v. DULUTH NEWS-TRIBUNE
COMPANY.[1]

June 7, 1897.

Nos. 10,576—(101).

### Contract—Damages.

Where the performance of a special contract involves the furnishing of
both material and labor, and the contract is entire, and the breach total,
loss of such profits as would have accrued from the contract as the direct
result of its fulfillment may be recovered in an action for a breach
thereof.

### Same—Evidence.

Such profits may be proven by showing the difference between the
contract price and what it would have cost to have performed; but no
inflexible rule as to how such cost is to be ascertained can be laid
down, for the profits must be determined according to the circumstances
of each case and the subject-matter of the contract.

### Same

The plaintiffs herein agreed to furnish wire, and set up for the de-
fendant a secondhand arc motor, to be as good as new, for a stipulated
price. They purchased, to enable them to perform the contract, in an
outside market a secondhand motor, changed and refitted it to make
it conform to the terms of the contract, and were ready to set it up
when the defendant repudiated the contract. *Held*, that the trial court
did not err in receiving evidence of the actual amount paid by them for
the motor, and the materials and labor necessary to refit and set it up.
as a basis for ascertaining the profits they would have made, except
for defendant's breach of the contract.

Action by Bernard Silberstein and another, partners as the Crow-
ley Electric Company, against the Duluth News-Tribune Company
in the municipal court of Duluth. From a judgment entered pur-
suant to findings by Boyle, Sp. J., in favor of plaintiffs, defendant
appeals. Affirmed.

*Neff & Hartley*, for appellant.
*Herbert R. Tinkham*, for respondents

START, C. J. The parties hereto entered into a contract on Jan-

[1] Reported in 71 N. W. 622.

uary 21, 1896, whereby the plaintiff agreed to furnish, set up, and wire for the defendant a ten horse power arc motor, with base frame, belt tightener, brushes, regulator, foundation, and oil pan, for the sum of $248. The machine was to be a secondhand one, but was guarantied to be first class, and as good as new. The plaintiffs entered upon and tendered performance of the contract on their part, but the defendant refused to let them complete it. Thereupon the plaintiffs brought this action for damages for such breach, and recovered a judgment for loss of profits in the sum of $128.97, from which the defendant appealed. The only questions raised on this appeal relate to the assessment of the damages.

The measure of damages for the sale of goods is, as a general rule, the difference between the contract price and their market value. But where, as in this case, the performance of a special contract requires the furnishing of both material and labor, and the contract is entire, and the breach total, loss of such profits as would have accrued from the contract as the direct result of its fulfillment may be recovered in an action for the breach thereof. Such profits may be proven by showing the difference between the contract price and what it would have cost to perform the contract. Morrison v. Lovejoy, 6 Minn. 224 (319); Glaspie v. Glassow, 28 Minn. 158, 9 N. W. 669; Pevey v. Schulenburg, 33 Minn. 45, 21 N. W. 844; Ennis v. Buckeye, 44 Minn. 105, 46 N. W. 314; Fox v. Harding, 7 Cush. 516; Masterton v. Mayor, 7 Hill, 61; O'Connell v. Main, 90 Cal. 515, 27 Pac. 373.

The correctness of this rule is not seriously controverted by either of the parties hereto, but they differ radically as to how the cost of performance is to be ascertained. The defendant's claim is that it and the profits are to be ascertained by adding the market value of the materials to the cost of the labor at its reasonable value, which is required for the execution of the contract, and deduct this amount from the contract price, and the difference, less a reasonable allowance for risks and contingencies, if any there are, will be the profits. On the other hand, the plaintiffs claim that the cost of performance of the contract in this case is the amount actually paid for the material and labor necessary for the performance of the contract, and the difference between this amount and the contract price gives the profits. The trial court adopted the rule suggested by the plaintiffs, and received evidence as to the actual price paid for the motor and the

work done upon it to make it conform to the requirements of the contract. The finding of the court as to damages was based on this evidence. If the rule for ascertaining the cost of performance suggested by the defendant is an inflexible one, and applies to the special facts of this case, then the trial court erred. It is apparent, however, that no hard and fast rule for ascertaining the profits can be laid down.

What is sought in cases of this kind by the allowance of damages for the breach of the contract is to place the party wronged, as nearly as can be done, in the same situation with respect to the contract as its performance would have placed him. If he shows that, if he had been permitted to perform, he would have realized profits, not from any collateral undertaking entered into on the faith of the principal contract, but as a direct result from its performance, damages will be awarded him to the amount of such profits as the only way to place him in the situation he would have been in if he had been permitted to perform the contract. Of necessity, such profits must be determined according to the circumstances of each particular case and the subject-matter of the contract. In a case where the material to be furnished has a market value, and the amount and value of the necessary labor to fit it for the performance of the contract are reasonably certain, and nothing has been done by the plaintiff, in performance of his contract, on account of its breach by the defendant, the rule for ascertaining the cost of performance, suggested by the defendant in this case, would seem to be the correct and probably the exclusive one.

But such is not this case. It is practically the reverse of the one supposed. The contract in this case did not call for a new and complete motor, but one as good as new. It also called for the performance of labor in connection with the motor in wiring and setting it up. The place of performance was the city of Duluth. The plaintiffs purchased in an outside market a second-hand motor, to be used in fulfilling their contract, and paid $85 therefor, also $8.58 for freight thereon to Duluth, where it was changed and repaired by the plaintiffs so as to meet the requirements of the contract. The cost of such changing, including materials and wiring, also including the expense of setting the machine up, was $25.45, making the total actual cost of performance of the contract $119.03. The total contract price was

$248, which was $300 less than a new motor would have cost.    After the plaintiff had thus purchased and refitted the motor, and done all that was essential for the performance of the contract, the defendant repudiated the contract, and refused to let the plaintiff set up the machine, which was still in the possession of the plaintiff at the commencement of this action.    There was no evidence in the case as to whether the machine, at the time of the breach of the contract, was worth more or less than it actually cost the plaintiff; nor is there any evidence or suggestion in the record as to whether there is any market value at Duluth for secondhand motors like the one in question.

Now, in view of the special facts and circumstances of this particular case and the subject-matter of the contract, the method sanctioned by the trial court for ascertaining the cost of the performance of the contract was prima facie correct, and the only certain and practical way to determine the amount of the profits the plaintiffs would have made if they had been permitted to perform the contract.    Counsel for defendant assumes in his brief that the plaintiffs, by securing and refitting the motor in the way they did, made a profit, because its market value, when so secured and fitted, was greater than the actual cost, and that they cannot charge the defendant with the loss of a profit thus made, and thereby secure the same profit twice.    If such were the fact, it was competent for the defendant to have shown it in mitigation of damages, but, as already suggested, the evidence does not justify the assumption.

Judgment affirmed.