OVERLAND SOUTHERN MOTOR CAR COMPANY *v.* HILL BROTHERS.

ATKINSON, J. The Overland Southern Motor Car Company, a corporation, was engaged in selling automobiles manufactured by the Wyllis-Overland Company, of Toledo, Ohio. On October 9, 1911, it entered into a written agreement with Hill Brothers, a firm of copartners, of Sylvania, Georgia, granting to them the exclusive right to sell Overland cars of several specified models in the county of Screven. Attached to the contract as a part thereof were certain tables of models of cars, which showed the net price and list price of cars of each model. The contract provided that it should expire on July 31, 1912, unless the corporation for breach of the terms by the firm elected to terminate it at an earlier date. Among other things it set forth the following: In consideration of an order for six Overland Motor cars of the models enumerated in the attached table, the corporation grants the firm the right to sell cars of the above types and styles in the territory above mentioned, and will use its best efforts at all times to secure the best possible shipments of cars ordered by the firm, and may discharge and fully satisfy all its obligations under the contract by delivering or offering to deliver to the firm, at any time during the life of the contract, the number of cars called for, "of any one or more of the models specified in said contract." As a part of the consideration for the grant of such right, the firm agrees to use its best efforts in "the sale of said cars within the territory aforesaid." In consideration of the performance of all its agreements, the firm is to be allowed "a net price on the various models" of cars as listed under the special table attached. "Receipt is hereby given for the amount of fifty ($50) dollars on each and every car ordered, as per the number of Overland cars specified in this contract, and it is mutually agreed that the party of the second part will place an additional amount of fifty ($50) dollars each with the party of the first part, as part of purchase-price on any other Overland car or cars than those specified therein and which the party of the second part may order during the life of this agreement. It is further agreed and understood that the balance of the purchase-price of the car or cars shall be paid by the party of the second part to the party of the first part in New York exchange or cash, upon delivery to the party of the second part by the party of the first part of any car or cars under this contract, at any of its places of business in the territory in which the said party of the first part operates, or to a common carrier." In the event the firm shall fail or refuse to "accept said motor cars," or shall fail to forward the balance of the purchase-price, or in cases where cars are shipped with draft attached to bill of lading and the firm shall fail to pay the draft, "all advance payments on purchase-price which may have been made on account of said car or cars shall belong absolutely to the corporation, at its option, as liquidated damages." At the time of executing the contract the firm deposited with the corporation $300, but did not order or specify any car. On May 28, 1912, the corporation wrote the firm a letter as follows: "The Overland Southern Motor Car Company is now ready, able, and willing to de-

liver to you, and hereby offers to deliver to you, six (6) cars, being balance not heretofore delivered in connection with your contract with this Company October 9, 1911. On account of these cars you have already paid part of the purchase-price of $50.00 each car, and we hereby request to send balance of purchase-price, as evidenced by your contract and the table of prices attached thereto. All as provided in the contract." On June 11, next ensuing, the firm ordered two cars, which it received and paid for, .and one hundred of the three hundred dollars on deposit was applied as part payment. No other cars were ordered or delivered to the firm. After the term of the contract expired, the firm demanded return of the remaining $200 on deposit, and upon refusal instituted an action against the corporation for money had and received. In its answer the defendant denied liability to the plaintiffs, and by way of recoupment alleged that plaintiffs had purchased from it six cars and had accepted and paid for two and had refused to accept and pay for four, thereby causing a breach of the contract, entitling the defendant to stipulated damages provided for in the contract, or in lieu thereof actual damages to a specified amount. The case was submitted to the judge without a jury; and after hearing evidence a judgment was rendered for the plaintiffs. The exception is to the refusal of a new trial. *Held:*

1. The contract did not bind the buyers to specify, at all events, cars to be delivered. The agreement contemplated purchase for resale, and is to be construed as intending that cars would be specified only when the buyers should ascertain the type and style of car their customer desired to purchase.

2. Relatively to the identity of cars to be sold, the writing left the contract open, and it required specification of cars by the buyers to bring the minds of the parties together on that point and to perfect a valid sale. *Buick Motor Co.* v. *Thompson,* 138 *Ga.* 282 (75 S. E. 354). Accordingly, as to the number of cars for which no order or specification was given by the buyers, there was no valid sale. Civil Code, § 4106; *Lewis* v. *Harris,* 144 *Ga.* 737 (87 S. E. 1021); *McCaw Mfg. Co.* v. *Felder & Rountree,* 115 *Ga.* 408 (41 S. E. 664); *Albany Mill Supply Co.* v. *United Roofing.and Mfg. Co.,* 12 *Ga. App.* 537 (77 S. E. 829); *Oliver Construction Co.* v. *Reeder,* 7 *Ga. App.* 276 (66 S. E. 955); *Wheaton* v. *Cadillac Automobile Co.,* 143 Mich. 21 (106 N. W. 399); *Oakland Motor Car Co.* v. *Indiana Automobile Co.,* 121 C. C. A. 319 (201 Fed. 499); *Price* v. *Weisner,* 83 Kan. 343 (111 Pac. 439, 31 L. R. A. (N. S.) 927); *Cold Blast Transp. Co.* v. *Kansas City Bolt & Nut Co.,* 52 C. C. A. 25 (114 Fed. 77); Elliott on Contracts, § 178. The decision by a divided court in the case of *Gile* v. *Interstate Motor Car Co.,* 27 N. Dak. 108 (145 N. W. 732, L. R. A. 1915B, 109), did not involve the invalidity of the contract on account of indefiniteness as to identity of the property to be sold.

(*a*) The recital as to an order for six cars in the first paragraph of the contract was equally as indefinite, and was insufficient as an order for any particular car.

3. Under a proper construction of the contract, the money acknowledged

to have been received by the corporation had reference solely to pur-chase-money of six cars, singly or collectively, which the firm might specify and order. Except in the two instances where orders were given, there was no valid offer or contract of sale; and the amount of the deposit, after the term of the contract had expired, was held by the corporation without consideration, as bailee, after the object of the bailment had ceased to exist. The facts differ from those involved in the case of Gile v. Interstate Motor Car Co., supra.

(a) Under the circumstances, after demand, an action would lie in behalf of the depositor for so much of the money as had not been applied in completing sales as provided in the contract.

4. There was no error in finding for the plaintiffs.

*Judgment affirmed. By five Justices, all concurring.*
SEPTEMBER 12, 1916.

Action for money had and received. Before Judge Bell. Fulton superior court. March 6, 1915.

*Bryan, Jordan & Middlebrooks,* for plaintiff in error.
*White & Lovett* and *John K. MacDonald Jr.,* contra.