# JOHN NEWTON PORTER COMPANY v. KIEWEL BREWING COMPANY.[1]

### May 25, 1917.

### Nos. 20,372—(135).

**Breach of contract — measure of damages.**

1. The measure of damages for a total breach of an entire contract, occasioned by a rescission on the part of defendant is the loss of profits.

**Contract not incomplete.**

2. Contract to prepare and furnish certain specially made premium catalogues, with option in defendant to select cover, *held* not to be incomplete.

**Contract valid.**

3. A contract by plaintiff to manufacture and deliver certain specially made premium catalogues for defendant's use, and providing that certain articles of merchandise shall be listed in such catalogue, *held* not to be uncertain and unenforceable because it did not contain a description of such articles.

**Rescission. of contract — evidence.**

4. Evidence considered and *held* sufficient to justify trial court in finding that defendant rescinded the contract without just cause.

**Restraint of trade.**

5. Contract construed and *held* not to be in restraint of trade.

Action. in the district court for Polk county to recover $1,025 for breach of contract. The substance of the answer is stated in the opinion. The case was tried before Watts, J., who made findings and ordered judgment in favor of plaintiff for $300. from an order denying

[1]Reported in 162 N. W. 887.
137 M—6

its motion for amended findings or for a new trial, each party appealed. Affirmed.

*W. A. Marin,* for plaintiff.

*W. E. Rowe,* for defendant.

QUINN, J.

Action to recover damages in the sum of $1,025 for breach of contract. The case was tried to the court sitting without a jury, findings of fact were made and judgment ordered for the plaintiff for $300. The defendant and plaintiff moved for amended findings or for a new trial, and from orders denying each of such motions both parties appealed.

In May, 1912, plaintiff and defendant entered into a written contract as follows:

"Gentlemen:

"You will prepare and deliver to us Twenty-five Thousand (25,000) specially made forty (40) page premium catalogues, at Twenty-nine and 50-100 ($29.50) Dollars per thousand, exclusive of extra or fancy cover.

"It is understood that the catalogues shall be printed specially for us and any necessary changes made to conform to our copy of introduction, explanations, etc.

"You will please list the various articles at an appropriate number of 'Labels' based upon a cost to us of three mills each or three dollars per thousand, when returned to us by our customers for redemption.

"It is understood that the merchandise listed shall be purchased from you, and shall be of high grade articles, guaranteed to give satisfaction, and shall be furnished upon the same cost as supplied by you to other customers.

"We agree to pay for the catalogues net cash upon receipt, same to be billed f. o. b. New York City, and shipped to us by freight via Great Northern Railway.

"We agree to pay by the 10th of the month for all merchandise which we may order during the previous month, according to the number of 'labels' represented therein, at the rate of three mills per label or three dollars per thousand, same being the basis of our catalogue. Your price to us shall include the individual wrapping, packing, addressing and

payment of postage on all articles sent by mail, as shown by the stars opposite them in the catalogue. Our customers will pay carrying charges, on all articles sent by freight or express.

"In consideration of this order, you agree that you will not contract for such catalogue with Cold Spring Brewing Company, Cold Spring, Minn., Bemidji Brewing Company, Bemidji, Minn., and East Grand Forks Brewing Company, East Grand Forks, Minn., nor with Hamm Brewing Company, St. Paul, Minn., Minneapolis Brewing Company, Minneapolis, Minn., Heileman Brewing Company, La Crosse, Wis., nor any brewery in Duluth, Minn., for use in that part of Minnesota west of a north and south line from International Falls to Brainerd, or north of an east and west line through Brainerd and Fergus Falls, Minnesota, so long as we confine ourselves to your system.

"We will send you cover design for front and rear covers and ask you to quote us prices for same in the colors of our labels on a special cover, and then we will advise you whether we will use such special cover. If we do not, you will reproduce the lithograph of our bottles of cream of malt tonic and white seal beer in half-tone cut for the rear cover, showing dotted lines where the labels are to be cut off. We will advise you of our decision as to the fancy cover promptly on receipt of your prices.

"If the foregoing is satisfactory to you, you will kindly indorse your acceptance at the foot hereof, which, when done, shall constitute the agreement between us.

"Yours very truly,<br>
"KIEWEL BREWING COMPANY,<br>
"By Chas. E. Kiewel, Mgr."

"We hereby accept the foregoing and under the conditions named.

"THE JOHN NEWTON PORTER COMPANY,
     "By John Newton Porter, Prest."

The answer contains a general denial, admits the signing of the contract, alleges that plaintiff never prepared or offered to deliver any of the catalogues, that plaintiff and defendant never reached an agreement concerning the kind of covers for the catalogues, and that therefore the agreement was never completed.

On the trial testimony was offered tending to show: That defendant is a corporation engaged in the brewing business at Crookston in this state; that the plaintiff is a corporation with its principal place of business in the city of New York and engaged in supplying manufacturers throughout the country with specially prepared premium catalogues for use as an advertising medium, and that on May 9, 1912, plaintiff's solicitor called upon defendant at its place of business and procured defendant to enter into the above contract; that, upon receiving the same from defendant, the solicitor immediately forwarded it to the plaintiff who approved and signed the same; thereafter plaintiff and defendant had some correspondence in relation to the kind of covers to be used, and that the defendant failed to express, in any manner, any choice of kind to be used; that in July plaintiff sent the contract to its attorney at Crookston, who called upon defendant with reference to the performance of the same, and that defendant then stated to the attorney for plaintiff that he did not intend to carry out the terms of the contract and that it would not pay for such catalogues. There was testimony also on the part of the defendant denying that defendant ever in any manner rescinded the contract, or that it ever told plaintiff's attorney that it would not pay for the catalogues and that the plaintiff never notified defendant of the price of the extra or fancy covers.

The trial court found as facts: That by the terms of the contract the defendant was not required to take or accept any of the articles of merchandise referred to therein, that on or about July 15, 1912, the defendant repudiated and rescinded the contract, without cause, and that plaintiff was damaged thereby in the sum of $300.

The plaintiff strongly contends that under the proofs it was entitled to recover as damages the sum of $525, for the reason that it conclusively appears that its profits under such contract would have been $300; that it paid its solicitor a commission of $200 for procuring the contract for it and also paid his expenses connected with the same in the sum of $25. The defendant at the same time contends that plaintiff is not entitled to recover in any amount, for the reason that the contract was never completed and therefore not enforceable; that the agreement, even if held to be a completed undertaking, was unenforceable, because the merchandise to be furnished by the plaintiff was insufficiently

described; that the plaintiff itself had never offered. to carry out or perform the agreement, and that there had been no default on the part of the defendant, and the attempted agreement is unlawful.

We are of the opinion that each of the orders appealed from should be affirmed.    There are no provisions in the contract requiring defendant to use any of the labels therein referred to, and the trial·court was right in holding that the plaintiff was not entitled to recover damages on account of a failure on the part of defendant to use the same. It is contended on behalf of the plaintiff that it was entitled to recover, in addition to the profits to be derived from the ́furnishing of the catalogues, the sum of $225, expenses which it was compelled to pay to its solicitor in obtaining the contract.    With this contention we do not agree.    The defendant did not solicit the contract, nor was it aware of such expenses at the time of signing it.    The agent solicited the contract at the instance of the plaintiff.    The expense was all incurred prior to the making of the contract.    The damages sought to be recovered are too remote.

The contract in this case was an entire one.    A total breach thereof was occasioned by the rescission.    The measure of damages is the loss of profits, that is, the difference between the contract price and the cost of furnishing the catalogues.    Ennis v. Buckeye Pub. Co. 44 Minn. 105, 46 N. W. 314; Silberstein v. Duluth News-Tribune Co. 68 Minn. 430, 71 N. W. 622.

The total contract price was $737.50, the cost of manufacturing the catalogues, $437.50, leaving a profit of $300.    This rule of damages leaves the party wronged by the breach, as near as can be done, in the same situation with respect to the contract as its performance would have left it.    Had the contract been performed, plaintiff could not have received back the commission or expenses paid to its solicitor.

Defendant contends that the contract is incomplete insofar as it relates to the extra or fancy covers for the catalogue.    We think the finding of the trial court was right in this regard.    Whether extra or fancy covers were to be used was optional under the contract with defendant, who was to inform plaintiff of its choice.    Plaintiff was ready and willing to furnish the plain covers according to the contract.

As to the contention that the contract was uncertain and unenforce-

able because it contained no description of the articles of merchandise to be contained in the catalogue, it appears that the contract provides that such articles, to be purchased from plaintiff, be of a high grade, guaranteed to give satisfaction, and be furnished at the same cost as supplied by plaintiff to other customers. The defendant is not required to purchase any of such articles, but it may do so, and it is provided that the catalogues shall be printed specially for the plaintiff and with necessary changes made to conform to defendant's copy of introduction, explanations, etc., giving to defendant the preliminary right of specifying the articles to be inserted. Nor do we think that this portion of the contract affects that part which is certain and valid. The contract is sufficient in this regard and such as might be enforced.

Defendant insists that the contract is in restraint of trade. A casual reading of the provisions of the contract in this respect, clearly shows that it only tends to prevent the plaintiff from furnishing such catalogues and articles of merchandise to certain parties in defendant's locality. It merely gives to the defendant the right to this advertising medium as against certain other parties. It in no manner fixes the price or production of the articles described in the catalogue, and is not in restraint of trade as contended for by plaintiff.

We have considered all of the other assignments made by defendant and find no reversible error.

Affirmed.