## WILLHELM LUBRICATION COMPANY v. WALLACE C. BRATTRUD.[1]

July 10, 1936.

No. 30,753.

*Moonan & Moonan,* for appellant.
*Charles Spillane* and *H. H. Sturner,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action for damages for breach of contract for failure to accept delivery of 11,500 gallons of lubricating oil and 4,000 pounds of transmission grease.

On January 24, 1934, plaintiff and defendant entered into an agreement which reads as follows:

"The above seller hereby sells and agrees to hold in its storage for the Purchaser, and the above Purchaser hereby buys, the merchandise described below, which shall be shipped to Purchaser at Waseca, Minn. on Aug. 1st, 1934, unless ordered out sooner.

| "QUANTITY | DESCRIPTION | | PER GAL. | TOTAL |
|---|---|---|---|---|
| "5000 gal. | Worthmore Motor Oil | SAE 10-70 Base | 21-31 | |
| "3000 gal. | Beterlube Motor Oil | SAE 10-70 | 26-36 | |
| "2000 gal. | Costal Motor Oil | SAE 10-70 | 18 ½-28 ½ | |
| "1500 gal. | Penzalube Motor Oil | SAE 10-70 | 34-44 | |

"4000 lbs. Black Devil Trans. Lub. . . . . . . . . . . . . . . . . . .5¢
As per Price List 34 attached"
[Parts of the contract not necessary to the discussion herein are omitted.]

Approximately three weeks after the making of the above agreement defendant repudiated the same. Plaintiff treated the contract as breached and brought this action for damages.

The jury returned a verdict for plaintiff in the sum of $210. Defendant moved in the alternative for judgment notwithstanding or for a new trial. The motion was denied and judgment entered. This appeal is taken from the judgment.

628

Three questions are presented:

(1)  Is the agreement between the parties in whole or in part so indefinite in its terms as to be unenforceable?

(2)  If indefinite in part only, is the contract severable?

(3)  Did the court err in instructing the jury as to the measure of damages for breach of the contract?

■  In considering the first question it is necessary to explore the meaning of the terms used in the contract.  Defendant, Brattrud, agreed to take a total of 11,500 gallons of oil of the different brands listed and 4,000 pounds of "Black Devil" lubricating grease.  The technical term SAE 10-70 opposite each item in the contract signifies seven weights of oil officially designated by the Society of Automotive Engineers according to their thickness or viscosity.  The lightest of these groups is designated SAE 10; the heaviest SAE 70; the intervening ones are 20, 30, 40, 50, and 60.  The price varies with the weight.  Thus, for example, under this contract, defendant agreed to take 5,000 gallons of "Worthmore Motor Oil" of any weight he should choose from 10-70.  The price for SAE 10 was 21 cents per gallon, and the price for SAE 70 was 31 cents per gallon.  The other weights varied in price between 21 cents and 31 cents per gallon.  The same applies to the other brands of oil that defendant agreed to take.

The total quantity of each brand of oil purchased was definite.  Defendant, however, had the right under the contract to specify any weight oil he wished within the weights listed.  The weight controlled the price, the price of each weight being definite.  But until the defendant chose a particular weight, the price he was obligated to pay under the contract was not ascertained.  Nor was there any agreement as to how many gallons of each weight defendant was to take.  As to these matters there had been no meeting of the minds or expression of mutual assent of the parties to the contract.  There was and could be no agreement as to these elements until the defendant indicated his wants within the specified limits of the alleged contract.  This indefiniteness and uncertainty in the contract, is, in our opinion, fatal to plaintiff's cause of action.  The

subject matter of a contract of sale must be definite as to quantity and price. The reason for this requirement is obvious when we consider the question of damages. As the contract now stands with respect to the oil defendant agreed to take, the application of any measure of damages, which in case of breach of such contract must be based partly on the contract price, is impossible. Here the quantity of each brand to be taken and the contract price thereof cannot be determined until the defendant places an order. This was never done. The agreement was repudiated before any order was placed. The court or jury cannot be allowed to speculate as to the measure of damages, and there is no sound authority for taking an average or an arbitrary price as the contract price in a case of this kind. This, in effect, would be inserting a new term in the contract, thereby remaking the agreement for the parties, which is beyond the power of a court or jury.

In the case of Wheeling S. & I. Co. v. Evans, 97 Md. 305, 55 A. 373, a contract of sale involving the same problem as the one in this case was before the court. The buyer had agreed to take 100 tons of tack plate. There were four grades, two at one price and two at another. It was held that no enforceable contract was created as there was no agreement as to how much of each grade the purchaser was to take, and the purchase price could not be ascertained until the purchaser designated which he wanted. The court said [97 Md. 312]:

"If the purchaser had the option to specify for any or all of the four gauges, it is clear that until such specifications had been made there could be no definite agreement; because it was the purchaser's privilege and right to designate 100 tons of No. 12, or of No. 14, or of No. 15, or of No. 16; or 25 tons of each gauge, or any other of a vast multitude of different proportions of the whole four gauges, or of any two or three of them. The price of each gauge was definite; the total quantity of tons was definite, and the times of delivery were definite; but the proportion of each gauge, as well as which of the four would be required, is wholly indefinite and uncertain. As to that element of the alleged contract there was obviously no

*consensus ad idem.* \* \* \* The test \* \* \*. lies in considering what would have been the measure of damages in a suit instituted by the vendor against the vendee for a breach of the alleged contract. Would the vendor have been entitled to recover the difference between the contract price and the market price of the whole 100 tons, reckoned on the basis of $2.80 per 100 pounds; or on the basis of $2.72 per 100 pounds; or on some other basis founded on an arbitrary apportionment of the whole number of tons amongst the four different gauges? \* \* \* What quantity of each gauge could a court or jury declare that the vendee ought to have specified? If either court or jury had undertaken such a task it would have supplied a term of the contract which the parties themselves failed to incorporate, and manifestly such a proceeding would have been unwarranted."

The majority of the courts which have considered the question are in accord with the principle laid down by the Maryland court in the above decision. Oakland M. C. Co. v. Indiana Auto. Co. (C. C. A.) 201 F. 499; Price v. Weisner, 83 Kan. 343, 111 P. 439, 31 L.R.A.(N.S.) 927; Price v. Atkinson, 117 Mo. App. 52, 94 S. W. 816; Overland S. M. C. Co. v. Hill Bros. 145 Ga. 785, 89 S. E. 833.

The compelling logic of the foregoing line of decisions, coupled with the obvious fact that the adoption of any other rule would result in innumerable difficulties and cause much confusion in actual operation, leads us to the conclusion that in an agreement of this kind the subject matter of the contract is too indefinite to be capable of identification, and no action will lie for breach thereof.

We are not unmindful of the cases cited by respondent which apparently express a contrary view. William Whitman & Co. v. Namquit Worsted Co. (D. C.) 206 F. 549; Black Hardware Co. v. Mt. Vernon-Woodberry Mills, Inc. (Tex. Civ. App.) 72 S. W. (2d) 303; Hylton Flour Mills, Inc. v. Bowen, 128 Cal. App. 711, 18 P. (2d) 689. The facts in these cases differ in some respects from those in the instant case. But we are of course not in accord with the rule adopted in these cases insofar as the same differs from the principle laid down in the line of decisions to which we have chosen to adhere.

Neither have we overlooked 2 Mason Minn. St. 1927, § 8438(2), which provides that in actions for breach of a contract for the sale of goods:

"The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract."

This statute, which is a part of the uniform sales act which is the law in this state, undoubtedly gives the seller a right to recover for certain losses sustained because of the buyer's breach of contract. It is, however, no criterion for determining whether or not the subject matter of an agreement is sufficiently definite to create an enforceable contract, as the adoption of such a test would not obviate the practical difficulties hereinbefore related. On the contrary, it assumes an otherwise valid contract, and merely provides for restitution to the seller for certain losses which would not be included in the usual measure of damages.

As to the portion of the agreement which provides for defendant's purchase of 4,000 pounds of lubricating grease, the contract is clearly not indefinite. The brand "Black Devil" is definite. The quantity, 4,000 pounds, and the price, five cents per pound, are likewise certain and definite. There is no discretion allowed the buyer, defendant, in either amount or price. Plaintiff is entitled to recover damages for breach of this part of the agreement if the agreement is legally severable.

In McGrath v. Cannon, 55 Minn. 457, 57 N. W. 150, and Potsdamer v. Kruse, 57 Minn. 193, 196, 58 N. W. 983, this court, speaking through Mitchell, J., approved the following as suitable tests of severability:

"If the part to be performed by one party consists of several distinct items, and the price to be paid by the other is apportioned to each item to be performed, or left to be implied by law, such contract will generally be held to be severable. * * *

"A contract made at the same time for different articles at different prices is not an entire contract, unless the taking of the whole is essential from the character of the property, or is made so by the

agreement of the parties, or unless it is of such a nature that a failure to obtain part of the articles would materially affect the object of the contract, and thus have influenced the sale had such a failure been anticipated."

See also Restatement, Contracts, § 607; Simmer v. Simmer, Jr. 195 Minn. 1, 261 N. W. 481.

The contract involved here is within the above classification. A separate price for the grease purchased is named in the contract. The price is in no way dependent upon the prices named for the other items which have been held to be indefinite. There is nothing to indicate that the plaintiff would not have contracted for the sale of the 4,000 pounds of grease alone, without regard to the various items of oil also covered by the contract. We conclude that the contract is severable and that plaintiff is entitled to recover damages for breach of this portion of the agreement.

■ The court did not err in instructing the jury that the proper measure of damages is the difference between the contract price and the cost of the merchandise to plaintiff, including all expenses, overhead, and cost of delivery. The general rule in case of breach of contract is that the party wronged should be placed, as nearly as is possible, in the same situation as complete performance would have placed him. Silberstein v. Duluth News-Tribune Co. 68 Minn. 430, 71 N. W. 622. Thus, in Restatement, Contracts, § 329, comments a and b, it is stated:

"In awarding compensatory damages, the effort is made to put the injured party in as good a position as that in which he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract. The various difficulties involved in this effort frequently make it impracticable to attain its purpose with any near approach to exactness. * * *

"Full performance by the defendant as agreed would usually result in a gain by the plaintiff; and the breach by the defendant is a prevention of this gain, as the defendant has reason to know. The

value of the promised performance is always one of the chief elements in fixing the amount that may be recovered as damages. The difference between this value and the cost of the plaintiff's own performance, if the latter is the lesser sum, is a profit to which the plaintiff practically always has a right as a part of the damages."

The measures to be employed in determining the amount of damages are methods or means employed to attain the above stated objective. Usually the measure is the difference between the contract price and the market price, Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124, if that measure will fulfill the desideratum, or, if not, the difference between the contract price and the cost of the goods to the seller. Silberstein v. Duluth News-Tribune Co. 68 Minn. 430, 71 N. W. 622; John Newton Porter Co. v. Kiewel Brg. Co. 137 Minn. 81, 162 N. W. 887. Which of the measures or methods to employ in a particular case depends upon which accomplishes the desired purpose.

Plaintiff herein is a company which compounds and sells at wholesale in a highly competitive market large quantities of oil and grease. It is not in the position of one who has obtained or prepared specific goods for the sole purpose of appropriation to one certain and specific contract. It has many contracts such as the one involved in this case. The breach of one such contract does not mean that the plaintiff must dispose of the quantity of goods specified therein in order to prevent serious loss. It merely means the loss of one sale and the profit that plaintiff would have received thereby. That profit is measured by the difference between the cost of the goods to plaintiff when the same are ready for delivery and the price for which it sells them to the retailer, which undoubtedly conforms closely to the current wholesale market price. If we were to apply the test that the damages are the difference between the contract price and the market price at the time and place of delivery, the only compensation plaintiff would receive would be measured by the amount the price on the market had fluctuated plus what difference there might have been between the price bargained for and the current market price at the time of the making of the

contract. This, clearly, would not include the profit to which plaintiff is entitled, which we hold in this case to be properly measured by the difference between the entire cost to plaintiff of the goods contracted for and the contract price which defendant agreed to pay plaintiff.

However, plaintiff is not entitled to recover of defendant commissions paid to the agent who procured this contract. John Newton Porter Co. v. Kiewel Brg. Co. 137 Minn. 81, 162 N. W. 887. All expenses incurred by a seller for the purpose of obtaining a sale are directed toward the goal of securing the profit under the contract. The above measure of damages gives to plaintiff its profit. To award also the amounts paid as commissions or expenses in the procuration of the contract would be to place the seller in an even better position in the case of breach of contract than if the contract had been completely performed. The loss to which a seller is entitled under 2 Mason Minn. St. 1927, § 8438, clearly cannot be said to include expenditures of this nature. Such expenditures cannot be said to be losses where they are for the purpose of procuring profit and that purpose is accomplished, whether accomplished by performance of the contract or by court action for breach thereof.

Because part of the contract in this case is unenforceable and the question of damages was submitted to the jury with reference to the whole thereof, the decision of the court below must be reversed and the case remanded for a new trial on the question of damages only in accordance with the views herein set forth.

So ordered.