PACE CORPORATION ET AL V. ALLAN JACKSON

No. A-5210. Decided November 2, 1955.
Rehearing overruled December 21, 1955.
(284 S.W. 2d Series 340)

180

*Brewer, Matthews, Nowlin & McFarlane, W. F. Nowlin* and *James V. Graves,* all of San Antonio, for petitioners.

The Court of Civil Appeals erred in holding that there was no evidence of probative force to support judgment based upon special damages; in holding Du Bose and Moffett liable in damages on a contract made with the corporation and to which they were not a party; in affirming a judgment for damages when the pleadings only alleged a difference between contract price and the cost of cigarettes purchased from other sources; in upholding a verdict for a claimed loss of future profit for a business not in existence at time contract was made, and for damages based upon speculation, conjecture and assumption of future profits. Cannaday v. Martin, 98 S.W. 2d 1009; Hardin v. Eubank, 245 S.W. 2d 554; Southwest Battery Corp. v. Owen, 131 Texas 423, 115 S.W. 2d 1097.

*Spears & LeLaurin,* and *G. Bert Smith, Jr.,* all of San Antonio, for respondent.

Cited, Ellisor v. Kennedy, 128 S.W. 2d 842; Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S.W. 2d 504; Construction and Gen. Labor Union v. Stevenson, 148 Texas 434, 225 S.W. 2d 958.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Suit for a declaratory judgment was instituted by Pace Corporation, Allan DuBose and Lee Moffett against Allan Jackson for the purpose of declaring the meaning of certain provisions of a written contract between the parties and of defining the rights and obligations of the parties thereunder. By way of cross action Jackson alleged a breach of the contract by the plaintiffs and sought a recovery of damages. The case was tried to a jury and its answers to certain special issues were made the basis of a trial court judgment for Jackson in the sum of $19,000. The Court of Civil Appeals has affirmed. 275 S.W. 2d. 849.

Prior to January 19, 1953, DuBose, Moffett and Jackson were each stockholders, directors and officers in Pace Corporation, a corporation engaged in the cigarette vending machine business in Bexar County. The corporation had a "direct line of credit" with the major cigarette manufacturers which enabled it to purchase cigarettes at a lower price than they could have been obtained from wholesale dealers. The evidence reflects that such a purchasing arrangement is difficult to obtain and, once obtained, is a very valuable business relationship since it affords those dealers who have it a substantial advantage in a business where the per unit profit is small.

A controversy between the parties over company policy was settled by Jackson's "getting out" of the corporation on January 19, 1953, under an agreement, reduced to writing, containing the following provisions: 1. Jackson's stock was sold to the corporation, payment therefor to be made in monthly installments over a period of five years. 2. Jackson was not to engage in the cigarette vending machine business, directly or indirectly, in Bexar County during the period of indebtednsss and for two years thereafter. 3. Neither Pace Corporation nor Moffet or DuBose individually was to engage "in the handling of the sale of cigarettes * * * in any manner whatsoever" in Kerr and Bandera Counties during the period of indebtedness. 4. Paragraph E, the heart of the controversy, reads as follows: "As a part of the consideration for this transaction, PACE CORPORATION agrees to supply ALLAN JACKSON for any business he may become interested in outside of Bexar County, with cigarettes on a cash basis, at cost, for a period not to exceed two years after PACE CORPORATION has paid its indebtedness to ALLAN JACKSON, such cost being defined as invoice price less normal trade and cash discount, if any."

Shortly after the execution of the foregoing contract and the

transfer of Jackson's stock in Pace Corporation as provided for therein he opened a cigarette business in Kerrville, Kerr County, for the sale of cigarettes at retail through vending machines and at wholesale to other retailers for over-the-counter sales. The vending machine business was established on March 13, 1953, and the wholesale business on May 1, 1953. He purchased his first cigarettes from a wholesale dealer and on May 10th placed an order with Pace Corporation which was filled. He placed his second order with Pace Corporation on May 20th but was notified that the order would not be filled. Should the contract be construed so that Pace Corporation was obligated to supply Jackson with cigarettes for the type of business in which he was then engaged there is no doubt but that the refusal was firm, unequivocal and sufficient to constitute an anticipatory breach of Pace Corporation's obligation under paragraph E of the contract.

Petitioners' declaratory judgment suit sought, principally, to establish that it was not obligated by paragraph E to supply respondent with cigarettes for a wholesale business but only for such cigarette vending machines as respondent might operate in Kerr and Bandera Counties. They sought also a declaration that the provisions of said paragraph were lacking in mutuality and were so vague, indefinite and uncertain as to be unenforceable as a contract. These allegations were duly controverted by respondent.

The case was submitted to the jury on six special issues in response to which the jury found: 1. The parties mutually intended that Pace Corporation would supply Jackson with cigarettes for a wholesale cigarette business to be carried on in Kerr and Bandera Counties. 2. Jackson was caused to lose profits in his wholesale business by reason of the failure of Pace Corporation to supply cigarettes at the contract price. 3. The amount of profits lost by Jackson in the wholesale business was $16,000. 4. Pace Corporation failed and refused to supply Jackson with cigarettes for his vending machine business. 5. Jackson was caused to lose profits in his vending machine business by reason of the failure of Pace Corporation to supply cigarettes at the contract price. 6. The amount of profits lost in the vending machine business was $3,000.

■ We are not impressed with petitioners' contention that when the contract is viewed from its four corners the words "any business" as used in paragraph E means, as a matter of law,

"any vending machine business." That limitation of the meaning of the words "any business" is wholly at odds with their ordinary signification, and any indefiniteness in their meaning arising out of the wording of other paragraphs has been resolved by the jury, upon conflicting evidence, in its finding that the parties intended them to include a contemplated wholesale business.

Our construction of the contract is that for a valuable consideration Pace Corporation obligated itself by paragraph E to supply Jackson, at cost, with all the cigarettes he chose to order at any time on reasonable notice, and from time to time, for his cigarette business in Kerr and Bandera Counties for a period of seven years.

■ In asserting that the contract is lacking in mutuality petitioners have reference to mutuality of obligation, and assume that paragraph E is a separate and divisible contract. Paragraph E is not a separate and divisible contract. It is a part of the entire integrated contract between the parties, and the consideration for Pace Corporation's promise to supply Jackson with cigarettes was the sale and transfer of Jackson's stock in the corporation at the price stipulated and the relinquishment of his rights incident to the ownership thereof. Blaffer & Farish v. Gulf Pipe Line Co., Texas Civ. App., 218 S.W. 89, no writ history. Consideration for the promise having been otherwise paid or furnished, the contract is unilateral and mutuality of obligation is unnecessary to its validity. Corbin on Contracts, Vol. 1, secs. 21 and 152; 12 Am. Jur. 509-513, Contracts, secs. 13 and 14; 46 Am. Jur. 254, Sales, sec. 63. This elementary rule is recognized in Corsicana Petroleum Co. v. Owens, 110 Texas 568, 222 S.W. 154, and in Johnson v. Breckenridge-Stephens Title Co., Texas Com. App., 257 S.W. 223, 225. In so far as the provisions of paragraph E are concerned the contract is not a bilateral executory contract for the sale of cigarettes for future delivery but is an option contract, supported by a valuable consideration. As was said by the Illinois court in Armstrong Paint & Varnish Works v. Continental Can Co., 301 Ill. 102, 133 N.E. 711, 714: " * * * where there is any other consideration for the contract, mutuality of obligation is not essential. If mutuality, in a broad sense, were held to be an essential element in every valid contract to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract." See also Mayhew & Isbell Lbr. Co. v. Valley Wells Truck Growers' Ass'n., Texas Civ. App., 216 S.W. 225, 231-232, no writ history. The unilateral obligation of Pace Cor-

poration was to be merged into such number of bilateral contracts for the sale of cigarettes as were necessary to supply Jackson's business. Bilateral contracts between the parties for the sale of cigarettes could only come into existence through the placing by Jackson of definite orders. Corbin on Contracts, Vol. 1, secs. 100, 262, 263 and 264.

In the light of this interpretation of the contract we are asked to hold that it was too vague, indefinite and uncertain to be enforceable. To so hold would require that the judgments of the trial court and Court of Civil Appeals be reversed and that judgment be here rendered that plaintiff take nothing.

The law requires a reasonable degree of certainty and definiteness in the subject matter of contracts, but the courts are not always in agreement as to just what particularity or refinement of terms is essential to meet the requirement of "reasonable degree of certainty." It is often said that less certainty is required in a suit for damages than in a suit for specific performance. Grimsley v. Life Ins. Co. of Virginia, Texas Civ. App., 154 S.W. 2d 196, 199, writ refused, W.O.M.; 12 Am. Jur. 556, Contracts, sec. 64.

■ Before considering the legal effect of the uncertain elements in the contract it will be well to note those elements which were certain and definite. The merchandise to be sold was cigarettes. The term during which they were to be sold was seven years. The price to be paid was "invoice price less normal trade and cash discount, if any," a price well understood by both parties. All of those elements were made certain in the contract. The first uncertain element was the quantity of cigarettes to be sold. The second uncertain element lay in the fact that there were more than a dozen different brands of cigarettes available, many manufactured in different styles (regular or king-size) and commanding differing prices, and the brands and styles to be sold and the quantity of each were not stipulated in the contract but were left optional with respondent.

The failure to provide in the contract for the quantity of cigarettes to be sold did not render it too indefinite and uncertain to afford a basis for awarding damages. The agreement to "supply" respondent with cigarettes for his business was simply a "requirements" contract, a type of contract held to be sufficiently definite to be enforceable. Cox, Inc. v. Humble Oil & Ref'g. Co., Texas Com. App., 16 S.W. 2d 285. Executory bilateral contracts for the sale and purchase of goods to meet the

business requirements of the purchaser are upheld by the courts of this state whether the goods be for use and consumption in the business, Jones Inv. Co. v. Great A. & P. Tea Co., Texas Com. App., 65 S.W. 2d 495, or for re-sale. Cox v. Humble Oil. & Ref'g Co., supra; Big Four Ice & Cold Storage Co. v. Williams, Texas Civ. App., 9 S.W. 2d 177, writ refused. This holding is in harmony with the majority rule in this country. Williston on Sales, Rev. Ed., Vol. 2, sec. 464a, p. 740. In such cases the promises to buy and sell such requirements supply the mutuality of obligation necessary as consideration and the element of definiteness of quantity necessary as a basis for fixing damages in the event of a breach by either party. In the latter respect the purchaser's damages would be measured by the extent to which the seller failed to deliver the purchaser's requirements and the seller's damages would be measured by the extent to which the purchaser failed to take his requirements. In this case respondent did not promise to take his business requirements from Pace Corporation, but a promise in that respect is no more necessary to supply an element of definiteness in Pace Corporation's obligation than it is to supply consideration therefor. Only respondent could suffer damages by a breach of the contract, and the measure of his damages in that event was fixed by the extent of the failure of Pace Corporation to supply his requirements. The possibility that respondent might not exercise his option at all, or might not exercise it to its full extent, does not detract from the certainty of Pace Corporation's promise to supply Jackson's requirements. Cohen & Sons v. M. Lurie Woolen Co., 232 N.Y. 112, 133 N.E. 370. We quote from Corbin on Contracts, Vol. 1, sec. 100, pp. 316-317, on the subject of indefiniteness: "The fact that one of the parties is given an option does not make an agreement too uncertain for validity * * * . If, in consideration of $10.00 paid by B, A promises to deliver as much wheat as B may wish to buy at one dollar per bushel, there is an enforceable option contract, even though it may turn out that B does not care to buy at all * * *."

■ The second element of uncertainty mentioned above presents a different question. The cases cited on the point by the parties involved bilateral executory contracts.

There is respectable authority for the proposition that a writing, intended as a bilateral executory contract for the sale of goods and definite as to total quantity, but giving one party the right to choose the quantity of differently priced brands, qualities, grades or assortments to be delivered or taken in fulfillment of the contract, is nudum pactum because of indefinite-

ness in the subject matter. Perhaps the leading cases for this proposition are Wheeling Steel & Iron Co. v. Evans, 97 Md. 305, 55 Atl. 373, and Wilhelm Lubrication Co. v. Brattrud, 197 Minn. 626, 268 N.W. 634, 106 A.L.R. 1279, although there are others of equal dignity to like effect. Two reasons, illustrated in the cited cases, are given for the holding: first, that the subject matter of the contract is so indefinite that there has been no meeting of the minds with reference thereto, and second, that the subject matter is too indefinite to form a basis for fixing damages. On the other hand, there is respectable authority for the conclusion that such contracts are not too indefinite and uncertain to be valid. Mebius & Drescher Co. v. Mills, 150 Cal. 229, 88 Pac. 917; Hylton Flour Mills v. Bowen, 128 Cal. App. 711, 18 Pac. 2d 689 (hearing denied by Supreme Court); Whitman & Co. v. Namquit Worsted Co., 206 Fed. 549, affirmed, C.C.A., 1st Circuit, 221 Fed. 49. Other cases supporting both conclusions are annotated in 105 A.L.R. 1100 and 106 A.L.R. 1284.

The Texas cases involving bilateral executory contracts and nearest in point are Gordon v. Emerson Shoe Co., Texas Civ. App., 242 S.W. 791, no writ. history, cited by petitioners in support of their position that the contract in this case is too indefinite to be enforceable, and Black Hardware Co. v. Mt. Vernon-Woodberry Mills, Texas Civ. App., 72 S.W. 2d 303, writ dismissed. In Gordon v. Emerson Shoe Co. an oral executory contract for the sale and purchase of "$4,000 worth of shoes" the styles, sizes and quality to be selected later by the purchaser, was held to be too indefinite as to subject matter to constitute a binding contract. In Black Hardware Co. v. Mt. Vernon-Woodberry Mills the contract was for the sale and purchase of 200 rolls of duck, of varying grades and widths to be selected by the buyer, at prices of from 32 cents per yard to $3.16 per yard. The purchaser ordered and paid for 47 rolls of duck but declined to specify or order the other 153 rolls. The contention of the purchaser that the subject matter of the contract was too indefinite to be a valid contract and afford a basis for the recovery of damages was overruled and the seller was permitted to recover in damages the difference between the contract price and the reasonable market value of 153 rolls of duck, less cost of transportation, measured by the average price of the 47 rolls which the purchaser had theretofore specified and ordered. Although there are distinguishing features these two cases can hardly be said to be in harmony. The contract considered in General Shoe Corp. v. Hall, Texas Civ. App., 123 S.W. 2d 721, no writ. history, cited by petitioners, was held to be too indefi-

nite to constitute a valid contract; but in addition to the fact that it contained no stipulation as to quantity it contained none as to price or the term for which it was operative.

Irrespective of which may be the better of the rules as applied to executory contracts, we are convinced that the theory of "no meeting of the minds" has no application to option contracts which, upon a valuable consideration, give a purchaser a right of choice of different brands, qualities, grades or assortments of goods to be taken in fulfillment thereof, or the right to take none whatever if he chooses. As has been observed, this type of contract is a unilateral contract. The contract simply imposes on the seller an obligation, during the period stipulated, to enter into one or more bilateral contracts for the sale of such goods as are designated or chosen by the purchaser. There is nothing indefinite or uncertain about that contract, and there is nothing uncertain about the obligation of the seller. Obviously there was a complete meeting of the minds of the parties. We have searched in vain for cases directly in point but have found none. None have been cited by the parties.

■ The conclusion we have reached is not inconsistent with the idea that a contract must be sufficiently definite as to subject matter to afford a basis for awarding damages for its breach with a reasonable degree of certainty. The all-important factor in the ascertainment of damages is price. The purchaser's damages in a suit against a breaching seller would normally be measured by the difference between the contract price and the price at which he could obtain like goods from other sources. Damages are thus fixed by a price differential. Of course there might be other incidental factors in a particular case. Where the contract fixes the total quantity of goods which may be ordered and gives the purchaser the right to choose from different brands, qualities, grades or assortments, at varying prices, and the proof shows that the purchaser undertook to exercise his option to its full extent but was prevented from doing so by the seller's breach, there should be no difficulty in concluding that the contract is sufficiently definite to permit the courts to arrive at the *minimum* damages to which he would be entitled. The damages could be fixed definitely by assuming the purchaser would have taken, if afforded the opportunity, all of the total quantity contracted for in that brand, quality, grade or assortment which furnished the minimum differential between the contract price and the price at which like goods could be obtained from other sources. That was the formula used by the United States District Court in awarding damages to the seller

in a suit against a breaching purchaser in Whitman & Co. v. Namquit Worsted Co., supra.

We now consider the contract between the parties in the light of what we have said. All individual parties to the contract were experienced in the cigarette business. They were bargaining for the purchase and sale of corporate stock that would eliminate respondent from an established business. A part of the consideration which respondent demanded for the sale of his stock was the promise of a competitive price advantage in a new territory for a period of seven years. Petitioners were willing to furnish that consideration. The parties knew substantially the sales records of the various brands and types of cigarettes, but they also knew of the absolute inability to stipulate, in advance, the precise quantity of each brand and style of cigarettes necessary to meet the requirement over a seven-year period of respondent's new business, in which there was no rcord of consumer demand, in the face of ever-possible changing consumer preferences and changing competitive conditions. Their contract met the business problem in the situation in about the only practical manner it could have been met—by giving respondent a choice of brands and styles to be exercised through the placing of orders. Knowing that different brands and styles of cigarettes sold at different prices, they stipulated a price basis which would apply to all brands and styles—"invoice price less normal trade and cash discount"—which was definite and which all parties understood. The contract was about as definite and certain as the parties could have made it under the circumstances and it was sufficiently definite and certain to furnish a basis for arriving with reasonable certainty at the minimum damages which respondent would suffer by reason of Pace Corporation's breach.

The award of damages to the respondent is attacked on three grounds: 1. Respondent did not plead special damages in the nature of lost profits. 2. Damages cannot be recovered for loss of profits in a new and unestablished business. 3. There is no evidence of probative force supporting the jury findings of lost profits, the findings being based upon pure speculation and conjecture.

The cross action for damages does not, with great clarity, seek special damages in the nature of lost profits, but we regard the allegations therein as sufficient, in the absence of special exception, to form the basis of a recovery thereof.

■ Respondent is not to be denied his right of recovery on the ground that he had no established business at the time the contract was made. He had an established business at the time Pace Corporation breached its contract. He continued to operate his wholesale business for some six months after the breach and was still operating his vending machine business at the time of trial. Recovery of damages in the nature of lost profits is allowed where a business is established on the strength of a contract but is discontinued because of its breach. Big Four Ice & Cold Storage Co. v. Williams, Texas Civ. App., 9 S.W. 2d 177, write refused; Graham Hotel Co. v. Garrett, Texas Civ. App., 33 S.W. 2d 522, writ dismissed, 64 Harv. Law Rev. 317. The cases cited in 13 Tex. Jur. 216, Damages, sec. 115, are not in point. They are cases in which the contemplated business was never established.

The damages awarded respondent were, in large measure, speculative, but the same could be said of any recovery of lost profits. This was recognized by the court in Grand Prairie Gravel Co. v. Joe B. Wills Co., Texas Civ. App., 188 S.W. 680, 686, writ refused, but it said: "In their nature, profits are more or less conjectural or speculative, but the injured party must not be deprived of his remedy because of difficulties lying in the way of proving his damages." This court recognized the problem and stated the rule in Southwest Battery Corporation v. Owen, 131 Texas 423, 115 S.W. 2d 1097, 1099, in this language: "It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. The courts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages."

Technically, respondent's suit for damages involved the breach of two separate contracts—a breach of the bilateral contract which came into existence when respondent placed his second order for cigarettes, and an anticipatory breach of the unilateral contract. Pollack v. Pollack, Texas Com. App., 46 S.W. 2d 292. It involved lost profits in the vending machine business from the time of Pace Corporation's breach until the time of trial some eight months thereafter and loss of future profits in such business for the remainder of the contract period of seventy-two months. It also involved lost profits in the whole-

sale business for the six-month period during which that business was operated and loss of future or prospective profits thereafter during the remainder of the contract period of seventy-three months.

■ We have no difficulty in sustaining the award of $3,000 as lost profits in the vending machine business. The respondent's undisputed testimony was that during the six-month period following Pace Corporation's breach he sold through vending machines an average of 1250 cartons of cigarettes per month, and that the minimum differential between the price he was compelled to pay for cigarettes and the contract price was on regular brands (Camels, Lucky Strikes, Chesterfields, Phillip Morris, etc.) and was two cents per carton. The price differential of two cents per carton on 1250 cartons per month would amount to $25.00 per month, or a total of $2,000 over the entire eighty-month period. In addition to this sum, respondent was entitled to recover profits which would have accrued from any normal increase in his business. Respondent began operation of the vending machine business on March 13, 1953 with 17 machines and at the time of trial, some 10 months later, he had 40 machines in operation. He testified that he could have operated 100 machines without additional overhead and, as an expert, that the territory would support 100 machines within a year or two; that with the trend of increased population he could expect an increase in the vending machine business of 25% each year during the contract period. Another witness, long in the vending machine business, supported respondent's testimony that the territory was largely undeveloped and would reasonably support 100 to 150 machines. Considering that the jury's finding awarded respondent only $1,000, or an average of $14.00 per month, to compensate respondent for future profits based on increased business, we think the testimony above detailed furnishes a sufficiently definite basis for the award.

The evidentiary basis for the jury's award of $16,000 as lost profits in the wholesale business is less definite and more speculative, but we have concluded that the evidence is not too speculative to support the finding.

Respondent began his wholesale business about May 1, 1953 and sold it to his brother on December 15, 1953. He testified that his income from the business was sufficient to meet his operating expenses but that it did not show a profit and that he was compelled to sell it because of his inability to obtain cig-

arettes from Pace Corporation at the contract price. His was the only wholesale cigarette business in Kerr and Bandera Counties and when he entered the business he proposed to sell regular brand cigarettes, purchased under his contract at slightly less than $1.99 per carton, at $2.03 per carton. He secured an order from Charles Schreiner and Company, a large retail outlet, for all of its requirements at $2.03 per carton. When he was unable to secure cigarettes from Pace Corporation at the contract price he was compelled to raise his sale price to $2.04 per carton and lost three-fourths of Schreiner's business.

The record reflects that following Pace Corporation's breach of its contract respondent bought regular brand cigarettes from other sources at $2.01 per carton and sold them at $2.04 per carton.He sold an average of 4650 cartons per month while he was in business. It thus appears that by selling 4650 cartons per month he was grossing $139.50 per month. He testified that this income was sufficient to meet his overhead expenses but that it yielded no net profit. If he had been able to buy at the contract price of $1.99 per carton and had sold at $2.03 per carton his gross profits on cigarettes actually sold during the six-month period would have been $186.00 per month, thus showing a net profit of $46.50 per month. The purchasing agent for Schreiner and Company testified that whereas they had purchased from respondent about one fourth of their cigarette requirements, or about 833 cartons per month, at $2.04 per carton, they would have purchased all of their requirements from respondent at $2.03 per carton. This additional business —approximately 2499 cartons per month—would have added $99.96 per month to respondent's income. Another retail dealer testified that at a price of $2.03 per carton he would have given his business of 150 cartons per month to respondent which would have added $6.00 per month to respondent's income, and a third retail dealer testified that at $2.03 per carton he would have given respondent additional business of approximately 133 cartons per month, adding $5.32 per month to his income. Thus it appears there is direct testimony supporting lost profits in the wholesale business of $157.78 per month or $12,464.62 for the period of seventy-nine months, leaving only $3,535.38 of the jury's award, or $44.75 per month not supported by direct evidence.

The witness McDaniel, a man of many year's experience in the cigarette business, testified that one with the advantages of a direct-line price located in Kerrville and willing to undersell out of county wholesale houses could increase his business very

quickly to the point where he would have all of it. While there is nothing in the record to show the amount of total sales, at wholesale, in Kerr and Bandera Counties, we think this testimony will support the additional award of $44.75 per month or $3,535.38.

■ Petitioners complain of the action of the trial court in permitting respondent to open and close the evidence and to have the opening and closing argument to the jury. They assert these rights belonged to them since they were plaintiffs in the declaratory judgment suit and by their suit assumed the burden of proving that the disputed contractual provision related only to a vending machine business.

Rule 266, Texas Rules of Civil Procedure, grants to the plaintiff "the right to open and conclude both in adducing his evidence and in the argument, *unless the burden of proof on the whole case under the pleadings rests upon the defendant*," and Rule 269, T.R.C.P., provides: "The party having the burden of proof on the whole case, or on all matters which are submitted by the charge, whether upon special issues or otherwise, shall be entitled to open and conclude the argument."

The question here, then, is who had "the burden of proof on the whole case?" We agree with the conclusions of the trial court and the Court of Civil Appeals that the burden was on respondent. In Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 Atl. 129, 131, 109 A.L.R. 1096, it is said: "There is no strict and rigid rule that the primary burden of proof is on the party who brings suit. Generally speaking, it is taken for granted. But it is because of expediency and inherent justice, and not because of initiative and action." In that case a declaratory judgment suit was brought by an insurer to determine whether its automobile public liability policy required it to defend a suit for damages against the insured, and the court held the burden of proof to be on the defendant to prove that the automobile at the time of the collision was not engaged in an unauthorized use. The court further said that the Declaratory Judgment Act which authorized the bringing of the suit did not change the relative normal positions of parties in which the one seeking redress must establish issues of fact in his favor by the greater weight of the evidence. Ordinarily one who first requests the intervention of a court in his behalf—who asserts a right or a duty and demands a remedy—is properly required to carry the burden of proving his right to the remedy and is entitled to such tactical advantages as inhere in his obligations. As our pro-

cedure is expanded to include new techniques and remedies, such as declaratory judgment, we must look to the reason behind "ordinary rules" lest we apply them blindly and unjustly. In the usual and ordinary case the burden of proof is not imposed on the plaintiff merely because he files his petition first but because he asks for action on his behalf from the court, either preventive or in the nature of redress. The other party is usually content with the status quo. Both logic and fairness demand that the plaintiff shoulder the responsibility of convincing the court that action should be taken. When, by statute, a litigant is allowed to initiate judicial action merely to determine his legal relationships, the logic of the above situation is unchanged. Although, as petitioners point out, declaratory judgment actions may be brought either before or after breach of a contract, nevertheless, if one party is asserting a right to damages or some other active relief in his own behalf, the burden of proving his right to that relief still rests upon him. The time sequence in the filing of pleadings can neither relieve him of his responsibilities nor deprive him of his advantages. Preferred Accident Ins. Co. of N. Y. v. Grasso, et al., U.S.C.A., 2nd Circuit, 186 Fed. 2d 987, 23 A.L.R. 2d 1234, 1241-1242. In keeping with its ruling permitting respondent to open and close the evidence and argument, the trial court, in the special issue submitted to the jury, imposed on respondent the burden of proof on the controverted issue involving the proper construction of paragraph E of the contract as well as on the issues or damages. We find no error in this procedure.

■ There was no error in refusing to submit petitioners' requested special issue inquiring if petitioners offered to supply cigarettes for the vending machine business. The same matter was adequately submitted in Special Issue No. 4 in the court's charge.

The judgment for damages ran against Pace Corporation and against Allan DuBose and Lee Moffett individually. Paragraph E of the contract did not bind DuBose and Moffet to furnish respondent with cigarettes. Paragraph D specifically recites that DuBose and Moffet joined in the execution of the contract "for the limited purpose of showing their agreement to be bound by the provisions" of that paragraph, a paragraph in which Pace Corporation and DuBose and Moffett, individually, covenanted not to engage in the handling of the sale of cigarettes in Kerr and Bandera Counties during the period of the indebtedness. There is no claim that that covenant

has been violated. The fact that DuBose and Moffett joined in perfecting the appeal from the trial court's judgment would not make them personally liable for damages for breach by Pace Corporation of the obligation imposed by paragraph E. Courts will not disregard the corporation fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations. Hildebrand on Corporations, Vol. 1, sec. 5 pp. 31-44; 18 C.J.S. pp. 376-385, Corporations, secs. 6 and 7; 13 Am. Jur. pp. 160-163, Corporations, secs. 7 and 8. There is no finding in this case, and no evidence justifying a conclusion as a matter of law, that DuBose and Moffett were using the corporate entity to defraud or deceive respondent. Respondent was as well acquainted with the financial structure of Pace Corporation as were DuBose and Moffett. There is no basis in the record for the judgment against DuBose and Moffett individually.

The judgment of the trial court and Court of Civil Appeals against Pace Corporation is affirmed. The judgment against DuBose and Moffett is reversed and as to them judgment is here rendered that plaintiff take nothing. All costs are assessed against Pace Corporation.

Opinion delivered November 2, 1955.

Rehearing overruled December 21, 1955.